Sarah GAMBLE and Lionel
Epstein, Appellants,

v.

B. Harold V. SMITH, Appellee.

No. 12577.

District of Columbia Court of Appeals.

Argued March 29, 1978.

Decided May 8, 1978.

---

David M. Moore, Washington, D. C., with whom James C. Gregg, Washington, D. C., was on the brief, for appellants.

B. Harold V. Smith, pro se, submitted a brief but did not appear for oral argument.

Before NEWMAN, Chief Judge, and KELLY and GALLAGHER, Associate Judges.

PER CURIAM:

Appellee Smith brought suit in the Small Claims and Conciliation Branch of the Superior Court to recover for injury to his car, which had occurred on February 5, 1976. At trial appellants Gamble and Epstein admitted liability for the injury, and evidence was presented solely on the issue of the

1. Appellee had already paid both the rental and Sears' repair bills.

2. The amount actually stated in the record is $632.13, which reflects an error in computation ($270.64 + $57.13 + $315 = $642.77).

3. From the used car guide prepared by the National Association of Auto Retailers, he started with the $750 retail value of a 1969

amount of damages to which appellee was entitled. From the trial court's award, appellants noted an appeal, which we granted pursuant to D.C.Code 1973, § 17–301.

Appellee presented the following evidence at trial: (1) auto rental bills totalling $270.64, for the approximately three-week period he was without his car; (2) a Sears, Roebuck & Co. repair bill for $57.13;[1] and (3) two separate estimates for body work, $315 and $640.38 respectively. He also testified that he had purchased the car, a 1962 Mercury Custom, in the fall of 1974 for between $400 and $500—later narrowing that range to $450–$475. He further testified that he had looked at secondhand autos which he considered comparable to his before the accident and found two—priced approximately $375 and $500 respectively. Upon questioning by the court, appellee conceded he was seeking about $642[2] for the cost of repairs and for compensation for his loss of use of his car.

Appellants presented their evidence through the testimony of, and reports prepared by, a professional damage appraiser, who was hired by appellants' insurance company. He estimated that the cost of repair would be $699.33. He opined that the value of the car immediately prior to the accident was $200 and afterwards was $25 for salvage. His estimate of the value of the auto immediately prior to the accident was made without having observed the car in an undamaged condition and was based on computations of a somewhat speculative nature.[3]

The trial court entered judgment for appellee in the amount of $750. Of this award, it made an oral finding of the reasonable amount for loss of use of the car amounting to $270. In its final order, it never made a specific finding as to the

Mercury Monterey—a different model and year from appellee's, since appellee's car was too old to be contained therein. He then applied a one percent per month depreciation rate, going back the seven years from 1969 to 1962, to arrive at a figure of $120 and added $80 for the apparently good prior condition of appellee's car to attain a total of $200.

value of the car immediately preceding or succeeding the accident.[4] The trial court did, however, characterize the damaged auto as "vintage" and consequently found appellants' estimate of its value to be incorrect, as not taking into account its "vintage" character and current scarcity on the market. The court considered the two applicable legal standards for determination of damages,[5] ruled that the car if repaired would not be worth substantially more than its value prior to injury, and entered judgment for $750 because "the cost of repairs and of rented cars exceeds this maximum award allowable in a small claims case." Since the court had previously found the reasonable compensation for loss of use to be $270, the implicit finding as to cost of repairs must have been greater than $480.[6]

There are two basic standards for determining the measure of damages for injury to personal property. First, there is "the reasonable cost of repairs to restore the damaged property to its former condition." *Smith v. Brooks,* D.C.App., 337 A.2d 493, 494 (1975). The second standard is the diminution in value of the property immediately before and after injury. *Id.* As we stated in *Knox v. Akowskey,* D.C.Mun.App., 116 A.2d 406, 408 (1955),

> [i]n the usual case it is obvious that repairs may be reasonably made and proof of value before and after the injury is not required. But when it appears that the cost of repairs approaches and perhaps exceeds the value of the chattel prior to injury, there should be proof that the repairs may be reasonably made, i. e., that the cost thereof will neither exceed the diminution in value caused by the injury nor exceed the value prior to the injury.

The principal issue at trial was which standard should apply and, on appeal, Gamble and Epstein argue that the trial court erred in using the cost of repairs measure. They argue that the amount awarded for cost of repairs—i. e., $480—clearly exceeded both the car's diminution in value and its total value prior to injury. We agree.

As noted previously, appellee testified that he purchased the car more than a year before the accident for between $450 and $475. Surely the car depreciated in value to some extent during that period, although quite likely not down to the $200 amount estimated by appellants. Appellee introduced no evidence to support the trial court's finding that the car is "vintage" and consequently worth more than $480. Indeed, appellants' witness, the appraiser, specifically denied that the car has any inherent value due to its age or that it is viewed as a collector's item on the market. Consequently, we think the trial court's implicit finding that appellee's Mercury is a vintage car worth $480 or more to be clearly erroneous—as having no factual support in the record.

A factual finding as to the fair market value of the auto immediately prior to injury is still necessary in this case in order for the trial court again to compare that figure with the cost of repairs—$372.13[7]—to determine which is the appropriate measure of appellee's recovery.

We affirm the award of $270 as reasonable compensation for appellee's loss of use of his auto while it was being repaired. The evidence fully supports that finding. Furthermore, we can see no logical distinction between an award for the loss of use of an auto for a *reasonable period of time* when the auto only needs to be repaired and when the auto has been totally destroyed so that the owner must

---

4. There was, however, no conflict in the evidence of value after the accident—the only evidence being the $25 salvage value.

5. See text *infra.*

6. The court found this despite the fact that appellee Smith indicated he only sought $372.13 for repairs (*i. e.,* $315 + $57.13).

7. This is using the figure concededly agreeable to appellee Smith at the trial court level and which consists of the $57.13 Sears repair bill plus the $315 estimate.

seek a replacement.[8] We also think the trial court is correct in not aggregating the amount of the award for loss of use with the cost of repairs in making its comparison with the diminution in value to decide on which measure of damages to use. No matter which award is proper for the damages actually done to appellee's car, he would not be made whole without recovery for the damages he suffered as a result of being without any vehicle for a period of time reasonably necessary to replace or repair his damaged auto.[9]

■ Consequently, we reverse and remand to the trial court for a determination of the fair market value of appellee's vehicle immediately prior to the accident[10] in order that the court can then compare the alternative standards of recovery and enter judgment for appellee according to the lower damage award, plus the award for his loss of use of his car (i. e., $270).

*Reversed and remanded with instructions.*

---

**8.** *See generally* Annot., 18 A.L.R.3d 497, 519–21 (1968) and cases cited therein. *But see id.* at 516–19. Naturally, an owner—seeking either to repair or to replace his vehicle—must mitigate his damages through prompt action. His recovery for loss of use must be limited to a period of time *reasonably necessary* to repair or replace the car. *See id.* at 545–48. *Accord, Brandon v. Capital Transit Co.,* D.C.Mun.App., 71 A.2d 621, 622–23 (1950); *Eschinger v. United Mutual Fire Insurance Co.,* D.C.Mun.App., 61 A.2d 725, 727–28 (1948).

**9.** *See* Annot., 18 A.L.R.3d, *supra* at 541–42. *But see id.* at 540–41.

**10.** For this purpose, the court may make its factual finding on the basis of the evidence already in the record concerning the vehicle's fair market value, but mindful that appellee Smith carries the burden of proof on that issue. *Smith v. Brooks, supra* at 494; *Knox v. Akowskey, supra* at 408. The evidence of record consists of the testimony of appellants' appraiser, estimating the value at $200, and appellee's testimony concerning the fair market value of comparable replacement vehicles, ranging from $375 to $500 (however, due to appellee's duty to mitigate damages, the lower market value of a replacement vehicle seems the more appropriate figure to consider).