### RELIANCE INSURANCE COMPANY, Appellant,

### v.

### MARKET MOTORS, INC., trading as Auto Market, Appellee.

### No. 84–575.

District of Columbia Court of Appeals.

Argued April 9, 1985.

Decided Oct. 4, 1985.

---

Keith M. Bonner, Washington, D.C., with whom Leo A. Roth, Jr., Washington, D.C., was on brief, for appellant.

Martin S. Protas, Rockville, Md., for appellee.

Before MACK and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

In this action in detinue, Reliance Insurance Company, the defendant below, appeals from the grant of summary judgment in favor of the plaintiff, Market Motors, claiming that there was a genuine issue of material fact which precluded summary judgment. We agree and reverse.

## I

On October 5, 1982, Reliance's insured, Michael Parker, a resident of Maryland, contracted to sell his 1979 Cadillac to Jane Ramirez for $9,000. On October 6 Ramirez gave Parker a $9,000 money order, and Parker delivered the car and its certificate of title to Ramirez. Early the following morning, Parker's wife contacted the bank upon which the money order was drawn and discovered that the money order had been stolen from the bank and was worthless. Parker notified the police at 9:30 a.m. on October 7.

Later that day Ramirez sold the car to Market Motors, a corporation engaged in the business of buying and selling used cars, for $7,000. Ramirez tendered a Virginia certificate of title and a registration card, both of which stated that they had been issued that same day. Although Leo Mason, who purchased the car on behalf of Market Motors, thought Ramirez looked a "little shaky," he failed to make any inquiries regarding the validity of the title. The entire transaction took "no more than ten minutes."

On October 12 Market Motors sold the car to Samuel Williams for $10,295. When Williams applied for a certificate of title, however, he discovered that the car had been reported stolen. He returned the car to Market Motors, which refunded the purchase price to Williams in full.

Thereafter Reliance paid Parker, its insured, $8,700, and informed Market Motors that it was claiming title to the car as subrogee under Parker's insurance policy. Reliance later took possession of the car, and Market Motors brought this action in detinue, claiming that it was a "good faith purchaser for value" and hence had acquired good title to the car pursuant to D.C.Code § 28:2–403(1) (1981).[1] Reliance

---

1. Section 28:2–403(1) provides:

   (1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods

defended on the ground, *inter alia*, that Market Motors was not a "good faith purchaser for value."

Market Motors filed a motion for summary judgment in which it asserted:

> [N]othing in the transaction with Ms. Ramirez could have aroused [Market Motors'] suspicions, or put it on notice of a possibly invalid title. Ms. Ramirez showed [Market Motors] a valid Virginia certificate of title, and a Virginia motor vehicle registration card. There were no irregularities in either document. [Market Motors] paid $7,000.00 for the automobile; a figure approximately its recognized "book value." Thus, [Market Motors] was a bona fide purchaser of the automobile as a matter of law.

Reliance opposed the motion, arguing that Market Motors, as a dealer in automobiles, should have suspected that something was amiss, and hence was not a good faith purchaser, because it purchased the car in a transaction which took no more than ten minutes from a woman who (1) appeared to be "shaky," (2) acquired the certificate of title on the day of the sale, and (3) made no demand but accepted its first offer at a price which was $500 less than its blue book value.

Despite these assertions, the court granted Market Motors' motion for summary judgment without a hearing and awarded it $10,295 in compensatory damages. On this appeal Reliance contends that there was a genuine issue of fact as to whether appellee was a "good faith purchaser for value," and that the court therefore erred in granting the motion for summary judgment.

## II

A court may grant a motion for summary judgment only when the pleadings and other evidence before the court demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *see Scott v. District of Columbia*, 493 A.2d 319, 321 (D.C.1985); *Davis v. Gulf Oil Corp.*, 485 A.2d 160, 164 (D.C.1984). In reviewing the grant of such a motion, this court must view the record in the light most favorable to the party who opposed the motion and resolve any doubt in its favor. *See, e.g., Swann v. Waldman*, 465 A.2d 844, 846 (D.C.1983).

In this case the record reveals that Parker, Reliance's insured, delivered his car to Ramirez in exchange for a $9,000 money order which proved worthless. Ramirez thus acquired "voidable title" to the car and had the power to transfer good title to a "good faith purchaser for value." D.C.Code § 28:2–403(1) (1981). Reliance does not dispute this legal principle but contends, as it did below, that there was a genuine issue as to whether Market Motors acted in good faith,[2] and hence whether it was a good faith purchaser for value.

The record, viewed in the light most favorable to Reliance, establishes that Mr. Mason, Market Motors' agent, purchased a car from a woman he had never met in a transaction which took "no more than ten minutes." Furthermore, Mason did not question the validity of her title to the car even though she "looked like she was a little shaky," [3] even though she had acquired the certificate of title on the very day of the sale, and even though she made

have been delivered under a transaction of purchase, the purchaser has such power even though

(a) the transferor was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the transaction was to be a "cash sale", or

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.

2. In the case of a merchant, good faith "means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." D.C.Code § 28:2–103(1)(b) (1981).

3. Mr. Mason so characterized her in his deposition.

no attempt to bargain but accepted Mason's first offer at a price which was $500 less than the car's blue book value (and $3,295 less than the price at which Market Motors sold it five days later). Although these facts—which Market Motors does not dispute—do not compel a finding that Mr. Mason acted in bad faith or that he failed to observe "reasonable commercial standards of fair dealing in the trade,"[4] they certainly raise an issue as to whether Market Motors was a good faith purchaser for value, which must be resolved not by the court on a motion for summary judgment, but by the trier of fact. *See Karibian v. Paletta*, 122 Mich.App. 353, 358, 332 N.W.2d 484, 487 (1983); *Landrum v. Armbruster*, 28 N.C.App. 250, 253, 220 S.E.2d 842, 844 (1976). *See generally White v. Luber*, 144 A.2d 774 (D.C.1958); *Blow v. Ammerman*, 121 U.S.App.D.C. 351, 350 F.2d 729 (1965). We therefore hold that the trial court erred in granting Market Motors' motion for summary judgment.[5]

*Reversed and remanded.*

---

**4.** D.C.Code § 28:2–103(1)(b) (1981).

**5.** The court also erred in concluding that Market Motors suffered damages in the amount of $10,295, the price for which Williams purchased the car. Although the appropriate measure of damages in a case such as this is the fair market value of the property at the time the party is deprived of its use, *see, e.g., Savoy Construction Co. v. Atchison & Keller, Inc.*, 388 A.2d 1221 (D.C.1978), "the market that determines the measure of recovery ... is that to which [the party] would have to resort in order to replace the subject matter." RESTATEMENT (SECOND) OF TORTS § 911 comment d (1977); *see,*

*e.g., Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003, 1006 (5th Cir.1982), *cert. denied,* 460 U.S. 1084, 103 S.Ct. 1775, 76 L.Ed.2d 347 (1983). Since Market Motors is a retail dealer, the appropriate measure of damages—assuming it is entitled to damages—is the wholesale value of the car at the time Market Motors was deprived of its use. RESTATEMENT, *supra* at § 911 comment d. A retail dealer may in some circumstances recover damages for lost profits, but only if it establishes that it contracted to sell the property at issue and was unable to obtain similar goods for delivery to the purchaser. *Id.*