### AMERICAN SERVICE CENTER ASSOCIATES, Appellant,

v.

### Kelly A. HELTON, Appellee.

### No. 03–CV–768.

District of Columbia Court of Appeals.

Argued May 4, 2004.

Decided Feb. 3, 2005.

---

Peter A. Chapin, Washington, DC, for appellant.

Andrew Butz, with whom D'Ana E. Johnson, Washington, DC, was on the brief for appellee.

Before RUIZ, GLICKMAN, and Washington, Associate Judges.

RUIZ, Associate Judge:

We granted this application for allowance of an appeal in order to consider an issue of first impression: whether our jurisprudence on remedies for injury to personal property embraces residual diminution in value after repair. We conclude that the law does indeed furnish this remedy. Because the grant of summary judgment dismissing the claim was based on a different understanding of the law, we reverse the judgment and remand the case for further proceedings.

## I.

On Friday, September 15, 2000, Kelly Helton was driving an Avis rental car in the District of Columbia when she collided with another motorist test driving a 1998 Mercedes–Benz E 320 owned by American Service Center Associates ("ASCA" or "dealership"), a franchised Mercedes dealer located in Arlington, Virginia. As a result of the collision, the Mercedes required $5,901.85 in physical repair, the cost of which was paid by Avis's insurance carrier on February 16, 2001.[1]

Apparently unaware of the insurance payment, ASCA filed an action on February 20, 2001, in the Civil Division of the Superior Court seeking to recover the cost of repair as well as $4,500 for the residual diminution in the Mercedes's worth after repair. The Superior Court dismissed the complaint because the fully remitted insurance payment ended the controversy over the cost of repair and the remaining claim for $4,500 was insufficient to sustain the court's jurisdiction. *See* D.C.Code § 11–1321 (2001) (conferring exclusive jurisdiction on the Small Claims and Conciliation Branch over any action for money damages where the amount in controversy does not exceed $5,000).

ASCA accordingly re-filed its action on May 10, 2002 in the Small Claims and Conciliation Branch seeking $4,500 as compensation for the residual diminution in the value of the Mercedes after repair. Helton responded by filing a motion for summary judgment, arguing that under *Gamble v. Smith*, 386 A.2d 692 (D.C.1978), there are two mutually exclusive measures of recovery for injuries to personal property: "'the reasonable cost of repairs to restore the damaged property to its former condition,'" or "the diminution in value of the property immediately before and

1. Neither Helton's liability, nor the reason-

ableness of the cost of repair, is disputed.

after the injury." *Id.* at 694 (quoting *Smith v. Brooks,* 337 A.2d 493, 494 (D.C. 1975)). Since ASCA already had received compensation for the cost of repair, argued Helton, any further award for the car's diminished value would unjustly confer on ASCA a "double recovery." ASCA opposed summary judgment with an affidavit sworn by its general manager claiming that the payment of the cost of repair had not made ASCA "whole."

In an extensive memorandum opinion Magistrate Judge Goodbread granted Helton's motion for summary judgment compelled by his understanding that long-standing D.C. law does not permit damages for residual diminution in value where the complainant already has recovered the reasonable cost of repair. The judge determined that the issue was controlled by *Knox v. Akowskey,* in which we stated,

> The basic rule for measure of damages for partial destruction of or injury to a chattel is the difference in value of the chattel immediately before and after the injury. An alternative measure is the reasonable cost of repairs necessary to restore it to its former condition.

116 A.2d 406, 408 (D.C.1955) (citing *Wright v. Capital Transit Co.,* 35 A.2d 183, 184 (D.C.1943) ("Where damages to an automobile are such that they may reasonably be repaired, restoring the vehicle to substantially its condition prior to the injury, the measure of damages is the fair and reasonable cost of the necessary re-

pairs.")). On this authority, the magistrate judge concluded that ASCA was "require[d] ... to elect between either (a) the difference in value before and after the accident or (b) the amount of the repairs, but not both." These remedies, said the judge, are "two alternate standards— which, significantly, are set forth as noncumulative options ...." Given that the insurer had paid the repair cost, ASCA was thus entitled to no further relief. The magistrate judge took great pains, however, to explain "the compelling [contrary] rationales of literally all surrounding jurisdictions which allow for [residual] diminution in value for damaged vehicles" in conjunction with the reasonable repair cost, and urged ASCA to seek appellate review.

▬ The dealership heeded the advice and pressed its claim on intermediate review by an associate judge of the Superior Court. *See* Super. Ct. Civ. R. 73(b) ("Judicial review of a final order or judgment entered upon direction of a hearing commissioner [now magistrate judge] is available (1) on motion of a party to the Superior Court judge designated by the Chief Judge to conduct such reviews or (2) on the initiative of the judge so designated."). The judge affirmed the order granting summary judgment because "[i]n the District of Columbia, there are two, alternative standards under which a Plaintiff can recover for damages to a chattel," and ASCA had been compensated under one to the exclusion of the other.[2]

**2.** A trial judge reviews orders entered by a magistrate judge under the same standard as would be applied by the Court of Appeals. *See* Super. Ct. Civ. R. 73(b). Though the court acknowledged this rule, it did not apply the requisite *de novo* standard applicable to questions of law, *see Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868 (D.C.1997), holding instead that the magistrate judge did not abuse his discretion. The trial judge believed that she was limited to reviewing for

abuse of discretion on the authority of two cases, neither of which is apposite. *See State Farm Mutual Auto. Ins. Co., et al. v. Hughes,* S.C. No. 95–1879 (Aug. 9, 1995) (mem. op. by Salzman, J.) (admonishing against conducting a *de novo* trial); *Weiner v. Weiner,* 605 A.2d 18, 20 (D.C.1992) (holding that the proper standard of review of child support awards under the then recently enacted Child Support Guideline, D.C.Code § 16–916.1 (Supp. 1991), is abuse of discretion) (citing analo-

We granted ASCA's application for allowance of an appeal in order to review the judgment and to consider specifically whether a complainant may recover residual diminution in worth resulting from injury to personal property after already having been compensated for the reasonable cost of repair. *See* D.C.Code § 11–721(c) (2001) (providing that appeals to this court from the Small Claims and Conciliation Branch may be taken by application).

## II.

Until now, we have not been presented with the argument that, despite "full repair," there should be further compensation when repair alone does not restore injured property (here, an automobile) to its pre-injury value. The argument is based on a distinction, recognized by the magistrate judge, between compensation for repair costs in order to restore the car's physical appearance and function and damages to compensate for loss of market value even after such repairs have been made. A chronological survey of our cases reveals that past plaintiffs have almost always sought at trial the reasonable cost of repair, and that, in each instance, the issue on appeal was the sufficiency of the evidence supporting the amount of damages for repair. *See Wright*, 35 A.2d at 185 (holding that the trial court erred in directing the verdict against the plaintiff because a "receipted itemized bill," supported by testimony showing that the repairs were necessitated by the collision, is sufficient *prima facie* evidence of the amount of damages); *Hemminger v. Scott*, 111 A.2d 619, 620 (D.C.1955) (affirming an award of the reasonable cost of repair because, despite the defendant's contrary assertion, there is no practical evidentiary distinction between the bill in *Wright* and the instant plaintiff's prospective repair estimate); *Knox*, 116 A.2d at 408 (reversing an award of the estimated cost of repair because the plaintiff did not prove that it was "reasonable," *i.e.*, that the award "would not exceed the difference in value of his vehicle before and after the collision"); *Brooks v. Capital Fleets, Inc.*, 123 A.2d 916, 917 (D.C.1956) (affirming an award of repair cost because the record did not support the defendants' argument that the receipted bill and estimate work sheet establishing the plaintiff's damages were somehow suspicious or untrustworthy); *Solomon v. Easterly*, 160 A.2d 621, 623 (D.C.1960) (remanding for a new trial because the plaintiff's seemingly identical damage estimates for two purportedly separate cars suggested that the award of repair cost rested on a "spurious claim"); *Brewer v. Drain*, 192 A.2d 532, 534 (D.C. 1963) (holding that the evidence was sufficient to prove a causal connection between the injury and the necessity of repair, as well as the reasonableness of the cost of repair); *Smith*, 337 A.2d at 494 (reversing for a new trial on the issue of damages because the plaintiff did not present sufficient evidence to establish that the cost of repair "neither exceeded the diminution in value caused by the injury nor the value of the car prior to injury");[3] *Gamble*, 386 A.2d at 694 (reversing an award of repair

---

gously Super. Ct. Gen. Fam. R. D cmt. (1992)). The trial court's chosen level of scrutiny does not require a remand or otherwise impair our ability to dispose of this appeal, however, precisely because the correct standard of review in this case at any stage of appeal, including ultimate review by this court, is *de novo*.

3. *But see* Standardized Civil Jury Instructions for the District of Columbia, No. 15–1 cmt. (1998) (implying that there is no practical reason to instruct the jury that the recoverable cost of repair may not exceed the "value prior to injury" because if the award exceeds the inherently smaller "diminution in value," the award will always be capped accordingly).

costs that "clearly exceeded both the car's diminution in value and its total value prior to injury").[4] Our jurisprudence concerning the measure of damages for injury to an automobile thus has had a *de facto* focus on the reasonable cost of repair.[5] There is no dispute in this case about the proof or reasonableness of the cost of the Mercedes's repair because Avis's insurance carrier remitted payment for that purpose to the apparent satisfaction of all the parties before this action was instituted in the Small Claims and Conciliation Branch. Rather, the present controversy is whether the pre-litigation payment of the reasonable cost of repair extinguished ASCA's damages claim for residual diminution in worth as a matter of law.

Neither *Knox* nor any of our other decisions answers the question posed in this appeal. We do not restrictively interpret our prior decisions—which as noted dealt with the reasonableness of the cost of repair—as announcing an exclusive cost-of-repair standard in all cases concerning partial destruction to an automobile. In *Knox*, we summarized the state of the law as follows:

> The basic rule for measure of damages for partial destruction of or injury to a chattel is the difference in value of the chattel immediately before and after the injury. An alternative measure is the reasonable cost of repairs necessary to restore it to its former condition.

This court has on several occasions approved the use of this alternative measure. In *Wright v. Capital Transit Co.*, ..., 35 A.2d 183, 184, we said: "Where damages to an automobile are such that they may reasonably be repaired, restoring the vehicle to substantially its condition prior to the injury, the measure of damages is the fair and reasonable cost of the necessary repairs." We were careful to say that reasonable cost of repairs may be used as the measure of damages where the damage "may reasonably be repaired." This we did because by great weight of authority cost of repairs may not be used as the measure of damages when such cost either exceeds the diminution in market value or exceeds the value of the chattel before the injury.

In the usual case it is obvious that repairs may be reasonably made and proof of value before and after the injury is not required. But when it appears that the cost of repairs approaches and perhaps exceeds the value of the chattel prior to injury, there should be proof that the repairs may be reasonably made, *i.e.*, that the cost thereof will neither exceed the diminution in value caused by the injury nor exceed the value prior to the injury.

*Knox*, 116 A.2d at 408 (some citations omitted). These rules apply with equal force today.[6] The critical point, however,

4. The *Gamble* court remanded with the instruction to enter judgment according to the "lesser damage award rule" (the lesser of fair market value prior to injury and cost of repair). This instruction, given without citation to any authority, was unnecessary to the court's disposition and is unprecedented in any of our holdings. *See* JEROME H. NATES, ET AL., 4 DAMAGES IN TORT ACTIONS § 37.11, at 37–51, 37–53 (Bender 2003) (categorizing *Gamble* as a lesser award rule case).

5. An exception is *Barker v. New*, 107 A.2d 779, 780 (D.C.1954), in which we remanded with instructions to measure damages according to the vehicle's diminution in value because the plaintiff "had traded in his damaged car for a new one before incurring any expense for repairs ...."

6. In the District of Columbia, juries may be instructed that

> [y]ou may award an amount that you feel will reasonably compensate the plaintiff for injury to [his] [her] property. If the property can reasonably be repaired, you should award the plaintiff the reasonable costs to

is that their scope is limited to two particular alternative measures of damages: (1) the difference in value of the chattel immediately before and after the injury, otherwise known as gross diminution in value,[7] and (2) the cost of repairs necessary to restore the chattel to substantially its condition prior to injury, bounded by reasonableness, which is usually capped by reference to the first measure, *i.e.,* gross diminution in value.[8] See *supra* note 3. None of our decisions explicating these principles has specifically addressed the issue of whether damages are *limited* to the cost of repair when it can be shown that repair is insufficient to restore the property to its value before the injury.[9] Our silence on an issue, however, should not be interpreted as a rejection. *See Umana v. Swidler & Berlin,* 669 A.2d 717, 720 (D.C.1995) (quoting *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.")).

There is nothing in the language of *Knox,* or any other precedent, that forecloses a complainant's recourse to residual diminution in value. That is the question before us: whether our law recognizes the availability of a remedy to compensate for residual diminution in value, *i.e.,* the remaining reduction in value after repairs are made. We conclude that it does.

■ We begin with the proposition, acknowledged in *Knox,* that diminution in value is the "basic" rule for the measure of damages for injury to a chattel, thus suggesting that other relief may sometimes be appropriate. *See* 116 A.2d at 408. Where a plaintiff comes to court with the form of proof most naturally anticipated and readily accessible to a litigant, *i.e.,* his or her repair estimate or bill, *Knox* recognized that "an alternative measure" of recovery may be the reasonable cost of repair. That recognition of the more likely proof of damages does not, however, preclude

repair it. If, however, the cost of repair is greater than the property's [loss of] [diminution in] value due to the injury, then you should award the plaintiff only an amount equal to the difference between the fair market value of the property immediately before the damage and its fair market value in its damaged condition.
Standardized Civil Jury Instructions for the District of Columbia, No. 15–1.

7. These figures are determined with reference to the time and place where the injury occurred. *Cf.* NATES, 4 DAMAGES IN TORT ACTIONS § 37.01, at 37–7, –8 ("This widely accepted measure of damages ... is so ingrained in American jurisprudence that courts have often applied the rule without stating it in full, sometimes omitting references to time, [or] place ....") (discussing the functionally identical measure of damages applicable to lost or fully destroyed property).

8. The somewhat circular nature of the reasonableness rule has led to the observation that "[p]robably many cases that appear to flirt with repair costs as a *measure* of damages are best explained as cases in which repair costs are merely good *evidence* of diminished value." DAN B. DOBBS, 1 LAW OF REMEDIES § 5.14(1), at 852 (2d ed. 1993); *see also id.* § 5.13(1), at 836 n. 11 ("Those cases which hold that diminished value of the property is a ceiling on repair cost recovery are essentially following a diminished value rule.") (citing illustratively our decision in *Gamble* ); Fleming James, Jr., *Damages in Accident Cases,* 41 CORNELL L. QUARTERLY 582, 594 (1956) ("In many cases the [purportedly distinct] rules will yield the same practical result, and partly because of this the reasoning of the cases is often confusing and the status of the rule uncertain.").

9. In his memorandum opinion, the magistrate judge observed that "[t]his [residual diminution] is a factor that *Knox* does not allow for, simply because, insofar as this Court can discern, it was never addressed in that case—or since."

proof of diminution of value by other means.

The trial court concluded that, as a matter of law, residual diminution in worth cannot be awarded in conjunction with, or after the plaintiff already had received, the reasonable cost of repair. That conclusion, however, was based on application of the rule that recovery for gross diminution in value and recovery for the cost of repair are mutually exclusive. That rule clearly is not apt in the context of residual diminution.

The reason for the mutual exclusivity of damages to compensate for repair costs and gross diminution in value is that they overlap (the first being a component of the second), and to award both would overcompensate the plaintiff. Thus, the need for election of remedies. "The purpose of the doctrine of election of remedies is not to prevent recourse to any remedy, but to prevent double redress for a single wrong." *Dean v. Garland,* 779 A.2d 911, 915 (D.C.2001) (quoting *Twin City Federal Savings & Loan Ass'n v. Transamerica Ins. Co.,* 491 F.2d 1122, 1125 (8th Cir. 1974)). A damage award comprising both gross diminution in value and the reasonable cost of repair therefore presents a classic example of the form of double redress prohibited by the doctrine of election of remedies. *See* DeWitt C. Blashfield, 15 Blashfield Automobile Law and Practice § 480.5, at 27 (4th ed. 2003) (explaining that a plaintiff may not recover the difference between the value of the injured vehicle immediately before and after the collision, in addition to the cost of repair necessary to restore the vehicle to its original condition, because a "motorist is not entitled to double compensation"). But whereas gross diminution in value subsumes the cost of repair, residual diminution in value does not duplicate the cost of repair because it is calculated based on a comparison of the value of the property before the injury and *after* repairs are made, *i.e.,* excluding injury compensated by damages for the cost of repair.

The ultimate test of the fitness of a damage award is its capacity to advance the goal of tort damages, which is "to make the injured party whole again." *Bell v. Westinghouse Electric Corp.,* 507 A.2d 548, 555 (D.C.1986) (citation omitted); *see also Blake Constr. Co. v. C.J. Coakley Co.,* 431 A.2d 569, 579 (D.C.1981). Clearly, no single fixed rule for recovery of damages for injury to personal property will invariably make an injured party whole; rather, the measure of damages depends upon the facts of the particular case. *See, e.g., Barker,* 107 A.2d at 780 (mandating the calculation of damages according to the diminution in value of an injured automobile that had been traded in for a new car prior to trial); *Royer v. Deihl,* 55 A.2d 722, 724 (D.C.1947) (calculating the damage sustained when an automobile was "totally wrecked" by subtracting the vehicle's salvage value from its reasonable market value immediately before the collision); *Union Storage & Transfer Co. v. Lamphere,* 40 A.2d 258, 259 (D.C.1944) (analyzing the reasonable cost of repair to an antique table whose shattered marble top was replaced before trial); *Wright,* 35 A.2d at 185 (analyzing the reasonable cost of repair for an injured automobile). Though measures may vary to fit the circumstances of each case, "the position to which the injured party should be restored is the same, *i.e.,* complete compensation for the injury." *Fred Frederick Motors, Inc. v. Krause,* 12 Md.App. 62, 277 A.2d 464, 466 (Spec.App.1971). For certain property, repair will achieve this goal and damages to compensate for the cost of repair will suffice. But for some property, the additional recovery for residual diminution in worth

is necessary to make the injured party whole.

> If the [chattel] is completely destroyed, the plaintiff receives the market value. To be consistent, the plaintiff should be put in the same position when his injured vehicle is repairable; he should have a vehicle of the same market value. If the repaired vehicle does not have the same market value, the plaintiff should receive additional damages. To do otherwise would put the plaintiff in a different position depending on whether the vehicle was partially or completely destroyed.

*Id.* We therefore hold that when a plaintiff can prove that the value of an injured chattel after repair is less than the chattel's worth before the injury, recovery may be had for both the reasonable cost of repair and the residual diminution in value after repair, provided that the award does not exceed the gross diminution in value.[10] Our conclusion is overwhelmingly supported by decisions in other jurisdictions that have considered the issue—including neighboring Maryland and Virginia—which allow recovery for the cost of repair made plus the residual diminution in value.[11] A long pedigree of influential com-

**10.** As an example, if a car worth $40,000 is worth only $25,000 after being damaged, it has suffered a $15,000 gross diminution in value. If after repairs of $10,000, the car is worth $30,000, the residual diminution in value is $10,000. Although the cost of repairs and residual diminution in value total $20,000, the award is capped at $15,000, the gross diminution in value.

**11.** *See, e.g., Larson v. Long,* 74 Colo. 152, 219 P. 1066, 1067 (1923) (permitting "admission of evidence of the [diminution] in value of defendant's car on account of its having been in the accident" because such "[diminution] is an element of damage"); *Halferty v. Hawkeye Dodge, Inc.,* 158 N.W.2d 750, 754 (Iowa 1968) ("[I]f the value of the repaired or restored property is less than the value of the property before the injury, such difference in value is also allowed in addition to the reasonable cost of repair or restoration."); *Broadie v. Randall,* 114 Kan. 92, 216 P. 1103, 1104 (1923) ("In cases where the repair of an injury did not restore the property to its original condition and value, but was a reasonable effort to make it as nearly usable as practicable, and as repaired was not as valuable as it was before the injury, the cost of the repair together with the difference in value of the repaired property and its value before injury might in some cases be a fair measure of the loss sustained."); *Krause,* 277 A.2d at 465 ("[I]f the vehicle looked and operated substantially the same after the accident but its market value had been diminished by the fact of being in an accident, then to be adequately compensated, the injured party must receive, in addition to the cost of repairs, the diminu-

tion in market value stemming from the injury."); *Thomas v. Global Boat Builders & Repairmen, Inc.,* 482 So.2d 1112, 1115 (Miss. 1986) (allowing recovery for residual diminution in value but doubting that an owner's testimony could constitute sufficient proof); *United States Fidelity & Guaranty Co. v. P. & F. Motor Express, Inc.,* 220 N.C. 721, 18 S.E.2d 116, 117 (1942) ("In determining the [diminution] in value of a motor vehicle as the result of an injury, the jury may take into consideration the reasonable cost of the repairs made necessary thereby, and the reasonable market value of the vehicle as repaired."); *Brennen v. Aston,* 84 P.3d 99, 102, (Okla.2003) (stating that "the overwhelming weight of legal authority supports the rule that damages are not limited to the cost of repairs actually made where it is shown that repairs failed to bring the property up to the condition it was in prior to the damage. In such cases, the cost of repairs made plus the diminution in value of the property will ordinarily be the proper measure of damages."); *Newman v. Brown,* 228 S.C. 472, 90 S.E.2d 649, 652 (1955) ("The damages are not limited to the cost of repairs actually made ... where it is shown that they did not ... put the property in as good condition as it was before the injury, and that it would have cost a larger sum to do so. In such cases, the cost of the repairs made ... plus the (remaining) diminution in value of the property will ordinarily be the proper measure of damages.") (alteration in original); *Averett v. Shircliff,* 218 Va. 202, 237 S.E.2d 92, 95 (1977) ("Most jurisdictions ... have held that where an automobile has been damaged but not totally

mentary also supports this position.[12]

## III.

█ Summary judgment may be entered in those cases where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Super. Ct. Civ. R. 56(a). Helton exclusively argued in the trial court that ASCA's requested relief was categorically unavailable in this jurisdiction, and this was the basis for the grant of summary judgment. Having determined that our law does not provide such a remedy, the trial court's stated basis for summary judgment is legally incorrect. Though Helton faults ASCA for the first time on appeal with failing to create through the affidavit a genuine issue of material fact in opposition to the motion for summary judgment, the record indicates that, stripped of the erroneous legal argument

we have just rejected in the preceding discussion, Helton foundered in her antecedent burden to show that the record presents no genuine issue of material fact. In this case that burden would be to show that ASCA suffered no residual diminution in the value of the car. Thus, the burden in opposition never shifted to ASCA, *see Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991) (citing *Landow v. Georgetown–Inland West Corp.*, 454 A.2d 310, 313 (D.C.1982)), and the judgment must therefore be reversed and the case remanded for further proceedings.[13]

*So ordered.*

destroyed and it is reasonably susceptible of repairs, the measure of damages is the cost of repairs and any diminution of the automobile's market value which results from the car having been injured after the repairs .…”); *Ellis v. King*, 184 W.Va. 227, 400 S.E.2d 235, 238 (1990) (“If, after repair, the damaged vehicle cannot be returned to its condition prior to the accident, we believe that damages for [residual] diminution in value are recoverable.”).

12. *See., e.g.,* RESTATEMENT OF TORTS § 928 (1939) (“Where a person is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for (a) the difference between the value of the chattel before the harm and the value after the harm or, at the plaintiff's election, the reasonable cost of repair or restoration where feasible, with due allowance for any difference between the original value and the value after repairs .…”); RESTATEMENT (SECOND) OF TORTS § 928 (1979) (“When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for (a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in

an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs .…”); McCORMICK ON DAMAGES § 124, at 471 (1935) (“if the article has actually been repaired before the trial, the plaintiff may recover the cost of repair, upon proving that this was reasonable, plus any depreciation upon comparing the value before the injury and after the completion of repairs, or less any enhancement, if the repaired article is more valuable than before the accident”); BLASHFIELD, AUTOMOBILE LAW AND PRACTICE § 480.11 (4d ed. 2003); 3 PERSONAL INJURY § 3.05(1), at 544.43 (Bender 1995) (“if repaired property is not substantially restored to its condition prior to injury, the measure of damages is the cost of repairs, plus the difference between the reasonable market value after repairs and its reasonable market value immediately before injury”); DOBBS, 1 LAW OF REMEDIES § 5.13(1), at 838 (“If the chattel is only damaged, the plaintiff may be permitted to recover the reasonable costs of repairs plus any remaining diminution in value.”).

13. ASCA opposed summary judgment with an affidavit sworn by its general manager claiming that (1) the retail value of the Mercedes at

the time of the collision was approximately $39,000 to $40,000; (2) following the collision, ASCA transferred the car to its loaner fleet rather than attempt to sell it; (3) ASCA intended to retain the car until it reached 50,000 miles, at which point the dealership would sell it, most likely in the wholesale market; and (4) at the time of such eventual sale, ASCA will sustain "at least a $4,500[] loss to its diminished value." We observe that this affidavit does little to create a genuine issue of material fact, other than to posit the bare allegation that ASCA suffered a residual loss in the Mercedes's value. *See Moseley v. Second New St. Paul Baptist Church*, 534 A.2d 346, 349 (D.C.1987) (per curiam) (stating that conclusory allegations by the non-moving party are insufficient to establish a genuine issue of material fact). It does not allege the car's worth in the wholesale market immediately before the collision, relying instead on the retail worth, *see* RESTATEMENT (SECOND) OF TORTS § 911 cmt. d ("the

market that determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter"), *cited with approval in Reliance Ins. Co. v. Market Motors, Inc.*, 498 A.2d 571, 574 (D.C.1985), nor does it state the wholesale value of the vehicle immediately after repair. *See id.*, cmt. k ("the value of the subject matter, as the basis for recovery of damages, depends upon the time at which the plaintiff is entitled to fix the completion of the tort"). The alleged $4,500 loss is insufficient to establish residual diminution in value because ASCA's general manager explicitly identifies it as the loss that would occur at a future sale, seemingly equating lost value to lost profits. This figure, moreover, does not account for the car's intervening depreciation while being used in the loaner fleet. The affidavit's correlation of the projected loss to the amount of present repair costs does not logically suffice to overcome this flaw.