Charles WITHERS, et al., Appellants,

v.

Elizabeth WILSON, Appellee.

No. 08–CV–1510.

District of Columbia Court of Appeals.

Submitted Nov. 12, 2009.

Decided March 4, 2010.

Jonathan R. Schuman was on the brief for appellants.

Morris R. Battino, Washington, was on the brief for appellant.

Before REID, Associate Judge, and FERREN and BELSON, Senior Judges.

BELSON, Senior Judge:

This is an appeal from a judgment in favor of appellee, Elizabeth Wilson, in the amount of $7,256.98, representing damages allegedly done to a stove, a microwave oven, and a hardwood floor by appellants, Mr. and Mrs. Withers, while residing as tenants in Ms. Wilson's house for a period of four years. Because the trial judge did not apply the appropriate measure of damages, we reverse the judgment of the trial court and remand for further proceedings with respect to damages.

## I.

Appellee, Ms. Elizabeth Wilson, resided at 1807 Second Street, Northwest, from 1998 until 2000. In 2000, Ms. Wilson installed a new stove and microwave oven in her home. That same year she also re-moved the vinyl kitchen flooring and had the original hardwood kitchen floor re-done, but did not have the other hardwood floors redone. She had planned to continue living in her home indefinitely, but her job required her to relocate temporarily. She decided to rent the house until she returned. Appellants Charles and Roslyn Withers were tenants in the house from May 2002 until August 2006. Prior to their tenancy Ms. Wilson had one other tenant who lived in the house for approximately eighteen months. Ms. Wilson moved back into her home in 2007.

During their tenancy Mr. and Mrs. Withers used Ms. Wilson's microwave and stove in such fashion that neither was operable when she moved back in. When Mr. and Mrs. Withers moved in the stove was a two-year-old, self-cleaning gas and electric stove in good working order; when they moved out it was clogged up with grease and the stove's gas vents and electricity had stopped working. As the stove could not be fixed, Ms. Wilson purchased a new stove for $1,690.99. The microwave, which was also approximately two years old when the appellants moved into the house, had also been in good working order. However, when Mr. and Mrs. Withers moved out in 2006 it was not operable. The vents were filthy and, although Ms. Wilson cleaned them, she could not make the microwave work. In 2006, Ms. Wilson replaced it with a new microwave that had a base price of $599.99, which did not include the protection agreement or the delivery charge.

The hardwood kitchen floor was in good condition in 2002 when Mr. and Mrs. Withers moved in. A portion of the kitchen floor was damaged because Mr. and Mrs. Withers repeatedly pulled the stove away from the wall and pushed it back in. This caused scratches and deep gouges.

A leak in the ceiling also caused some damage to the kitchen floor. Ms. Wilson testified that water was allowed to collect on the floors for some time before she was notified of the problem. Mr. Withers testified, however, that prior to notifying Ms. Wilson of the leak, and immediately after noticing it, he notified the management company. He stated that it took them approximately two to three months to repair the leak.

After Mr. and Mrs. Withers were evicted and Ms. Wilson noticed the water damage and the damage caused by the movement of the stove, Ms. Wilson replaced some water damaged wood in the kitchen floor, and had the floor sanded and stained. She also restained the rest of the hardwood floors on the lower level of the house so that they would match the kitchen floor, which was not separated from the floors of the other rooms by a door or similar threshold. In addition, she refinished the floors on the second floor because they were damaged by the water leaking from the ceiling. She paid a total of $9,432.00 to have the floors throughout the house redone.

Liability and other damages having already been conceded and set forth in a partial consent judgment for Ms. Wilson, the only issue at trial was the amount of additional damages Ms. Wilson should be awarded against the appellants. Ms. Wilson requested judgment in the amount of $11, 799.77, representing the combined cost of the new stove, new microwave and the work done on the hardwood floors on both levels of the house.

In closing argument, defense counsel pointed out that there was no evidence as to the cost of the original stove that was purchased in 2000 and installed in the home, beyond the fact that it was new at that time and under warranty. The same was true of the microwave. There was also no evidence presented at trial as to how much the original stove and microwave would still be worth in 2006 if in good operating condition. Mr. and Mrs. Withers argued that the floor would have sustained normal wear and tear from the time that the vinyl was pulled up in 1999 until the time that they moved out in 2006, and that by recovering the replacement cost of the floor Ms. Wilson would be put in a better position than she would otherwise have been in.

The court credited Ms. Wilson's testimony that the microwave and stove were damaged beyond repair and had to be replaced. Ultimately the court awarded Ms. Wilson damages in the amount of $7,256.98, representing the cost of replacing the stove and microwave with a brand new and similar stove and microwave, as well as the cost of refinishing the entire first floor, but not the second floor, of the house. The trial judge stated that the consequence of resurfacing only the kitchen floor would be "jarring" because the entire first floor "was one continuous area," and thus Mr. and Mrs. Withers were liable to Ms. Wilson for the cost of fixing the kitchen floor and the cost of restaining the other lower level floors to match the kitchen. The trial judge was satisfied that Ms. Wilson was entitled to receive the total cost of the replacement appliances because they were similar to the appliances that the appellants destroyed. She stated that she understood defense counsel's argument that Ms. Wilson was not entitled to brand new appliances but disagreed, stating that Ms. Wilson was not obliged "to put in a minimal when she put in something better than a minimal by far with a dual fuel range and stove."

## II.

In *Knox v. Akowskey,* 116 A.2d 406 (D.C.1955) we stated, "[t]he basic rule for

measure of damages for partial destruction of or injury to a chattel is the difference in value of the chattel immediately before and after the injury. An alternative measure is the reasonable cost of repairs necessary to restore it to its former condition." *Id.* at 408 (citing *Wright v. Capital Transit Co.,* 35 A.2d 183, 184 (D.C.1943)).

■ As we stated in *American Serv. Ctr. v. Helton,* 867 A.2d 235 (D.C.2005), "diminution in value is the 'basic' rule for the measure of damages for injury to a chattel." *Id.* at 241 (citing *Knox, supra,* 116 A.2d at 408). If a chattel is completely destroyed, the plaintiff owner is entitled to the fair market value of the chattel at the time of its destruction. *Helton, supra,* 867 A.2d at 243 (citing *Fred Frederick Motors, Inc. v. Krause,* 12 Md.App. 62, 277 A.2d 464, 466 (1971)).

We have recognized recently that fair market value is the usual and "traditional" measure of damages in the similar situation of the conversion of property, unless "fair market value cannot be determined or would be inadequate, as when, for example, the article destroyed was unique or possessed qualities the special nature of which could only be appreciated by the owner." *Trustees of the University of the Dist. of Columbia v. Vossoughi,* 963 A.2d 1162, 1175 (D.C.2009) (discussing value of professor's lost course materials, unpublished research data, and self-fabricated research instrumentalities). In the case before us, there was no evidence that the stove or microwave was unique or possessed qualities of a special nature.

■ As the record supports the trial court's finding that the stove and microwave were, in effect, destroyed, it remained for the court to determine the fair market value of the chattels as of the time the tenants vacated.

■ Fair market value is defined as the price that "would result from fair negotia-

tions between an owner willing to sell and a purchaser desiring to buy." *Royer v. Deihl,* 55 A.2d 722, 724 (D.C.1947). Appellee purchased the two appliances in 2000, and replaced them in 2006. She acknowledges that they were used by a different tenant for approximately eighteen months before appellants Withers moved into the home and commenced to use them in 2002.

Rather than present evidence of the fair market value of the six-year-old appliances, Ms. Wilson sought to receive the purchase price of a new stove of similar quality, $ 1,690.99, and a new microwave of similar design (a hood microwave), $599.99, both purchased in 2006. Ms. Wilson offered no evidence of the original price of the stove and microwave, and did not offer her own estimation of what they would be worth six years after she purchased them if they had been subject to ordinary wear and tear. She simply testified that she had purchased new, similar appliances and entered in evidence the receipts from the purchases.

The trial court awarded her the full cost of the replacement appliances. The trial court was not asked to determine the fair market value of the replaced appliances by considering such factors as age, depreciation or the effect of ordinary wear and tear. *See J & K Moving & Storage Co. v. Wyatt,* 200 A.2d 384, 385 n. 2 (D.C.1964) (upholding damage award where only evidence of value was original purchase price of household items lost and their age, but noting "actual sum awarded was derived by taking a percentage of the price according to its stated age"); *Sawyer v. Monarch Cab Co.,* 164 A.2d 340, 341–42 (D.C.1960) (reversing and remanding where damage to taxicab was calculated solely on basis of its purchase price, not considering such pertinent factors such as mileage, length of time in operation, and manner of use); *Union Storage & Transfer Co. v. Lam-*

*phere*, 40 A.2d 258, 260 (D.C.1944) (reversing award of damages when sole evidence of value of broken antique marble table top was its replacement cost); *see also Zellers v. United States*, 682 A.2d 1118, 1121 (D.C. 1996) (appliances like television and microwave are subject to everyday wear and tear and thus experience prompt depreciation).

In light of the foregoing authorities, we agree with appellants that, with respect to the stove and the microwave, the trial court erred in awarding appellee the full price of the appliances appellee purchased to replace them.[1] We therefore remand for determination of the fair market value of the stove and microwave at the time Mr. and Mrs. Withers vacated the premises.

### III.

With respect to the hardwood floor, the evidence established that, unlike the microwave and stove, it could be repaired and was repaired prior to trial. This court addressed the question of the proper measure of damages when real property is injured but can be restored to the condition it was in prior to the injury in *Wentworth v. Air Line Pilots Ass'n*, 336 A.2d 542 (D.C.1975). We adopted the rule applied in Maryland that " 'where the damaged property can be restored to the condition it was in prior to the injury, without cost disproportionate to the actual injury, the cost of such restoration is the measure of damages; but where that is impracticable, then the difference between the value of the property before and after the injury is the correct measure.' " *Id.* at 543 (quot-

ing *Sainato v. Potter*, 222 Md. 263, 159 A.2d 632, 636 (1960)). It should be noted that the Maryland courts have agreed with the RESTATEMENT that " 'where a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building.' " *Superior Constr. Co. v. Elmo*, 204 Md. 1, 102 A.2d 739, 742 (quoting RESTATEMENT (SECOND) OF TORTS § 929 cmt. b). Under the circumstances, it was appropriate for the trial court to proceed, as it did, by considering the cost of repairing the floor, rather than by attempting to ascertain the difference in value of the property before and after the injury, as a starting point to measure the damage award attributable to the injuries to the floor.

The evidence at trial was that in 1999, after lifting the vinyl from the kitchen floor, Ms. Wilson simply had the kitchen floor sanded and restained to try to match the rest of the house; she did not have all of the lower level floors redone. As appellant points out, Ms. Wilson did not present pictures of what the hardwood kitchen floor looked like after it was originally resurfaced to show that it matched the rest of the house. Thus, because she originally resurfaced only the kitchen floor, it would follow that she needed to repair only that floor to restore the premises to the condition it was in prior to the occupancy by appellants. The person who refinished the floor for appellee, Mr. Burch, testified for Ms. Wilson that in order to do a satis-

---

1. We recognize that it may prove unduly difficult or expensive for appellee to produce expert testimony concerning the fair market value of the appliances at the time appellants vacated the premises. If appellee undertakes to testify herself as to their values, it will be for the trial judge, who is hearing the case without a jury, to evaluate that testimony and determine what weight to give it. *Maalouf v. Butt*, 817 A.2d 189, 191 (D.C.2003) (applying the *Glennon* rule, set forth in *Glennon v. Travelers Indemnity Co.*, 91 A.2d 210 (D.C.1952)). This is not a case in which special expertise is required to estimate the values of the items in question, unlike the ten-year-old fur coat estimated by its owner to be worth $13,000, which figured in *Mahallati v. Williams*, 479 A.2d 300 (D.C.1984).

factory job he had to redo all of the floors throughout the home. He explained, "you can't match it when there was no stop point. There was no threshold leaving the kitchen to make a stop point there. So we continued to match the stain throughout the first floor...." He never saw what the floors looked like prior to the damage and he could not testify to whether the floors all matched at that time.

 The evidence strongly suggests that the kitchen floor did not match those in the rest of the house prior to the damage, as the person who refinished the floor testified for Ms. Wilson that he had to stain all of the floors in the house in order to make them match, and Ms. Wilson had failed to do this prior to Mr. and Mrs. Withers' occupancy. Ms. Wilson's evidence did not establish that the appearance of the kitchen floor matched the appearance of the other wood floors before Mr. and Mrs. Withers moved in. Moreover, Mr. Burch testified that he had to actually replace some of the wood in the kitchen due to water damage. The trial court expressly found that Mr. and Mrs. Withers reported the leak in the roof to the management company and it did not attribute any water damage to their negligence. Thus, Mr. and Mrs. Withers were not responsible for that portion of the bill attributable to the wood replacement. Because the trial court held Mr. and Mrs. Withers liable to Ms. Wilson for both the cost of replacing the wood and the cost of staining the hardwood floors throughout the entire first floor rather than only the kitchen, we hold that the evidence does not adequately support the trial court's finding as to the amount of damages due appellee for damage to the floor, and the amount of such damages must be revisited on remand. As the evidence concerning the appearance of the kitchen floor as compared to the appearance of the other wood floors before appellants moved in was not fully developed, the trial court may consider additional evidence in that regard on remand.

For the foregoing reasons, we reverse the damage award and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*