**TOWN OF CLARKSVILLE, VA., v. UNITED STATES.**

**No. 6447.**

United States Court of Appeals
Fourth Circuit.

Argued July 2, 1952.

Decided Aug. 5, 1952.

· B. S. Royster, Jr., Oxford, N. C., and George E. Allen, Richmond, Va. (Ashby B. Allen, Allen, Allen, Allen & Allen, Richmond, Va., and Frank W. Hancock, Jr., Oxford, N. C., on the brief), for appellant.

Elizabeth Dudley, Atty., Department of Justice, Washington, D. C. (Wm. Amory Underhill, Asst. Atty. Gen., A. Carter Whitehead, U. S. Atty., Harris Grimsley, Sp. Asst. to the U. S. Atty., Richmond, Va., and Roger P. Marquis, Atty., Department of Justice, Washington, D. C., on the brief), for appellee. ·

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HAYES, District Judge.

DOBIE, Circuit Judge.

· This is an appeal from an order of the United States District Court for the Eastern District of Virginia, entered in a proceeding by the United States to condemn, among other properties, certain parts of the water and sewer lines of the Town of Clarksville, Virginia, for use in the establishment of a flood control project in that

area. A trial by jury was demanded in the complaint but subsequently the parties stipulated that construction of substitute facilities would constitute just compensation for the interests of the Town which have been taken. The stipulation further provided for a judicial determination as to whether in law (a) the cost of constructing a sewage treatment plant, and (b) the cost of the operation and maintenance of five lift stations, not needed under the old system, which the United States has agreed to construct, are compensable items. The District Court denied the appellant's claim for these items, and its order further provided that the action should be held open until other conditions had been complied with, at which time final judgment would be entered determining that just compensation had been made. The memorandum opinion of the District Court is reported at 104 F. Supp. 369.

When this appeal was first filed, it was apparent that the order of the District Court was not appealable under Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., since the case was held open for future determination and the order was hence not a final one with respect to the claims involved in this appeal. See Kam Koon Wan v. E. E. Black, Ltd., 9 Cir., 182 F.2d 146, 148; Etten v. Kauffman, 3 Cir., 179 F.2d 302. But since that time the District Court has complied with Rule 54(b) by issuing an order determining that there is no just reason for delay and expressly directing entry of final judgment upon the two claims, and we think there is now jurisdiction to consider the appeal.

The general rule of appealability here is stated in Catlin v. United States, 324 U.S. 229, at page 233, 65 S.Ct. 631, 633, 89 L.Ed. 911, to be that "ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property."

Of course, where multiple claims are involved in the condemnation, Rule 54(b) will modify this principle. That Rule reads as follows:

"(b) Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

The condition precedent for the application of this Rule is the presence of more than one claim in the action, and where there is only a single claim or "factual occurrence" the Rule cannot be invoked to confer jurisdiction upon an appellate court. See Pabellon v. Grace Line, 2 Cir., 191 F.2d 169, 174; Canister Co. v. National Can Corp., 3 Cir., 163 F.2d 683; Western Contracting Corp. v. National Surety Corp., 4 Cir., 163 F.2d 456. Hence the inquiry in the present case is whether the two "claims" of the Town of Clarksville for additional compensation are separate claims from the rest of the condemnation award within the meaning of the Rule.

A separate claim is said to be that which is entirely distinct from other claims involved in an action and which arises from a different occurrence or transaction. See Reeves v. Beardall, 316 U.S. 282, 285, 62 S.Ct. 1085, 86 L.Ed. 1478; Western Contracting Corp. v. National Surety Corp., supra at page 458 of 163 F.2d. Thus in State of Texas v. Chuoke, 5 Cir., 154 F.2d 1, certiorari denied 329 U.S. 714, 67 S.Ct. 45, 91 L.Ed. 620, where there were two claimants to a condemnation award, which had already been agreed upon and paid into court, an order of the District Court that

one claimant had no right to any of the award was held to be a decision on a separate claim. There are many other examples of separate claims found in the cases but none which throws much light on the instant question. See, e. g., Prickett v. Consolidated Liquidating Corp., 9 Cir., 180 F.2d 8, 9; Hanney v. Franklin Fire Ins. Co., 9 Cir., 142 F.2d 864; Zalkind v. Scheinman, 2 Cir., 139 F.2d 895, 903, certiorari denied, 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572; Lydick v. Fischer, 5 Cir., 135 F.2d 983; Karl Kiefer Machine Co. v. United States Bottlers Machinery Co., 7 Cir., 108 F.2d 469. See also the discussion in Moore's Federal Practice, Vol. 3, 1949 Supp. at pages 186–201.

■ In a sense, the two items of additional compensation which the Town demands might be said to be counterclaims, for although technically they are only part of the main award, in reality they are something separate and distinct from that which the Government included in its complaint. In any event, we do not think that the award here can be viewed as a single factual unit from which only one set of rights or claim can spring. Just as several claimants may seek to share in an award and a decision denying the right of any of them will be one on a separate claim, so a decision including or excluding a particular item of property in the compensatory list ought to be equally appealable where the District Court makes the necessary entry of judgment in compliance with Rule 54(b).

■ As the Supreme Court has stated, there are two competing considerations in a question of appealability: "the inconvenience and costs of piece-meal review on the one hand and the danger of denying justice by delay on the other." Dickinson v. Petroleum Corp., 338 U.S. 507, 511, 70 S.Ct. 322, 324, 94 L.Ed. 299. We think the latter consideration is more compelling here. The District Court's order is a final one for all practical purposes, since nothing is left to be done under it except construction of the substitute system (without the two additional items) and agreement by the parties on the amount of engineers' fees to be awarded. (We are informed that this amount has since been determined.) The sole contest here was over the treatment plant and lift stations, and this has now been decided by the District Court's judgment. To view this contest as only an indistinct part of the whole condemnation proceeding is to give Rule 54(b) a hypertechnical interpretation not in accord with its manifest spirit and purpose. It would mean that no order in a condemnation proceeding involving only one claimant could be appealed from, unless of course it denied the actual right of taking, until the entire proceeding was concluded. If jurisdiction is denied in the instant case, appellate review of the two issues it presents will have to wait until the substitute system is constructed, all other matters are wound up, and formal entry of judgment is made declaring that just compensation has been paid. Then if we reverse the District Court's decision on the two items, the amount to be awarded on them will still have to be determined at a time long after the case should have been closed. If Rule 54(b) was designed for any purpose, it is to afford relief in just such a situation. See Reeves v. Beardall, 316 U.S. 283, 285, 62 S.Ct. 1085, 86 L.Ed. 1478; Audi Vision, Inc. v. RCA Manufacturing Co., 2 Cir., 136 F.2d 621, 624, 147 A.L.R. 574; Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83, 85. See also Moore's Federal Practice, Vol. 3, 1949 Supp. at page 189.

We are called upon to determine whether the District Court erred in denying the Town's claim for compensation for the cost of constructing a sewage treatment plant and the operation and maintenance of the five lift stations of the new substitute system. We think that the scope and meaning of just compensation embraces these items in its ambit and that the District Court's decision was, therefore, incorrect.

The facts may be summarized as follows: The United States, by authority of the Congress of the United States, formulated plans which it is now in the process of executing, to erect some distance below the Town of Clarksville a dam on the Roanoke River to impound in a large lake its waters. This is now known as the John H. Kerr dam and reservoir, formerly the Bugg's Island project. The Town of Clarksville is

located on the south side of the Roanoke River, at the confluence of the Dan and Staunton Rivers, and when the project is completed the waters of the Roanoke will inundate about 41% of the Town's present area and will render useless its present water and sewer systems.

The existing sewer system was constructed about 1926 and has been adequate to serve the Town and community. The Town is quite small, having a present population of about nine hundred, which will be increased to around fourteen hundred after the flooding when a new area is annexed to it. Its sewer system operates by gravity, and there are no pumping stations or mechanical equipment of any kind. There are two sewer outfalls which empty into the Dan River and two which empty into the Roanoke River, at four separate points, approximately 1,000 to 1,500 feet apart. The velocity of the river current apparently has been sufficient to cleanse the outfall areas of sewage.

When the parties stipulated that just compensation should be paid by a substitute facility, the Town submitted to the Government plans and specifications which included a single outfall and five lift stations. Due to the topography of the ground, these lift stations were necessary to move the sewage over the hills. And when the proposed Kerr Dam and Reservoir is filled with water, the maximum flood level is expected to be 320 feet above mean sea level, necessitating abandonment of the four existing outfalls.

The State Water Control Board of Virginia had issued to the Town of Clarksville on April 2, 1947, a permit to continue to run its sewage into the Roanoke River. This license was of indefinite duration and under the policy of the Board would not be revoked or modified until the Town's sewer system should be substantially changed or the Board should achieve its eventual plan to prohibit pollution in all Virginia waters. The Board had under consideration the plans and specifications for the Town's relocated system and issued an order prohibiting its use until suitable sewage treatment, in the form of a treatment plant, was afforded.

Both the United States and the Town are in agreement that it is the duty of the Government to provide a substitute facility for the Town's present sewer system, but disagree on what constitutes that facility under conditions as they will exist when the flooding becomes an accomplished fact. Under the stipulation, this question was left for judicial determination. The Government's complaint demanded a jury trial, and the appellant insists in its brief that it was deprived of this right. The point, however, was not pressed in oral argument and it is clear, in any event, that the stipulation entered into after the complaint was filed, waived trial by jury on the issues it left open for the District Court's decision. Of course, if it were determined that the items in issue were allowable, then the amount to be awarded might be fixed either by agreement or by submission to a jury, but the instant contest was clearly meant to be heard by the court. See Smith v. Cushman Motor Works, 8 Cir., 178 F.2d 953; United States v. 243.22 Acres, 2 Cir., 129 F.2d 678, certiorari denied Lambert v. United States, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558.

The general principles applicable to an eminent domain taking of municipal facilities are well established. The taking may be justly compensated by payment of the cost of a substitute, so long as a full equivalent is afforded for the property taken. See Brown v. United States, 263 U. S. 78, 44 S.Ct. 92, 68 L.Ed. 171; United States v. Arkansas, 8 Cir., 164 F.2d 943; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786, 790; United States v. Wheeler Township, 8 Cir., 66 F.2d 977; Town of Bedford v. United States, 1 Cir., 23 F.2d 453, 56 A.L.R. 360. Of course, the interests of the public, upon which the payment burden rests, are at stake, too, and the award must not be in excess of strict equivalence. Yet we are not here dealing with a rigid, blind measure, that grants compensation only on a pound of flesh basis, but rather with an equitable concept of justice and fairness that accords with the Fifth Amendment's mandate. Accordingly, the equivalence requirement which must be met with respect to the sub-

stitute facility is more that of utility than of mere dollar and cents value. Jefferson County v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564. And the substitute facility must be that which the claimant is legally required to construct and maintain, whether or not this type be more expensive or efficient than the facility which was condemned. United States v. Arkansas, supra; United States v. Des Moines County, 8 Cir., 148 F.2d 448, 160 A.L.R. 953, certiorari denied 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444; United States v. Wheeler Township, supra; Town of Bedford v. United States, supra at page 456 of 23 F.2d, 56 A.L.R. 360. See also Nichols on Eminent Domain, 3rd. Ed., Vol. 4, 1951, at pages 451 and 454.

With these principles as a measure, we turn first to the question of the sewage treatment plant. The Town is at present prohibited by the Virginia Water Control Board from utilizing the substitute system until such a plant is constructed. Previously the Town had operated its old system under an indefinite license from the Board without any treatment plant and it contends that, absent the taking and construction of a substitute, it would have continued to do so without Board interference.

The Government meets this argument by, in effect, simply denying that the Town could have continued to operate its old system without a treatment plant. The Government points to a regulation of the Water Control Board, adopted February 18–19, 1949, before the condemnation proceedings had been started, which provided for the substantial reduction in the pollution of the waters of the State caused by discharge of sewage, by the construction of treatment plants and like facilities. This regulation was mailed to the Town, which made a number of reports to the Board, as required by the regulation, indicating that it had been prevented from making any definite plans until completion of the government project. On two occasions the Board requested representatives of the Town to come and discuss with them the problem of sewage treatment, and on February 12, 1952, the Board notified the Army Engineers Corps that the Town's sewage

should be treated regardless of whether or not the sewer system was changed.

It is the reasoning of the United States, adopted by the District Court, 104 F.Supp. at page 372, that the condemnation proceeding had nothing to do with the necessity of the treatment plant, since the pollution was already present and since there is evidence that the Water Control Board was about to take action anyway.

We do not agree with this interpretation. The Water Control Board took no positive action until after the condemnation was started. The taking was at least operative as both notice and spur to the Board to act. Moreover, it is apparent that the Board's policy was not to revoke or modify existing licenses until a sewer system was substantially changed. Certainly there is a strong inference that, without such forced alteration by the Government, the Town could have operated under its present license for many years, if not indefinitely, without being required to build a treatment plant.

We fail to see how it can logically be argued that the Government's action did not fasten this obligation upon the Town. The duty to build the plant was not present before the condemnation simply because it was not yet required, the Water Control Board's action being the sole determinant of its existence. The fact that there may have been just as much pollution under the old system as there will be under the new, about which there is much conflicting testimony, is not controlling. The pollution does not create the obligation; rather it is the action of the Board which has that effect. The liability the Town owes to the State is merely to comply with the Water Control Board's requirement of obtaining a license. It owes no responsibility to eliminate pollution until told to do so.

In United States v. Wheeler Township, 8 Cir., 66 F.2d 977, a comparable situation was presented. The United States attempted, by condemnation proceedings, to secure a perpetual easement for overflow of the Township's highways, occasioned by the raising of the natural levels of a nearby lake. A trespasser had unlawfully

maintained the lake at higher than natural levels before the condemnation. The Government wished to raise it even higher and argued that compensation should be paid only for this additional flooding. But the court held that the measure of damages was the difference in expense between a reasonably passable road (the kind the Township could be compelled to furnish under the pertinent state statute) at natural lake levels, and one at the flowage levels provided for in the condemnation. The court said in 66 F.2d at p. 985:

> "The proper standard is not that of the present inadequate roads on the one hand nor a high grade of highway on the other. It is that type of road which it is the legally compellable duty of the township to maintain. If the present standard be taken and tomorrow the township be compelled to build a better type of road there would, unquestionably, be an added expense in building such road caused solely by this condemnation burden. Why should not this added expense be made good by the one causing it?"

We think the Government has the same responsibility here. Whatever the amount of pollution under the old water system, whatever change of attitude the Water Control Board might have experienced without the relocation, the fact remains that the Town of Clarksville is now under an obligation that it did not have before. As was said in Town of Bedford v. United States, 23 F.2d 453, 454, 56 A.L.R. 360:

> "To take the furnished means of meeting a liability imposed by law has the same effect as taking property technically vested; loss accrues."

For this loss the Government must afford just compensation.

We also think that compensation must be given for the cost of operation and maintenance of the five lift stations of the substitute system. This is an expense likewise imposed on the Town by the condemnation. Previously the Town's sewer system operated by gravity and needed no mechanical equipment. Now the system is being relocated and the terrain over which the new pipes will run is hilly, necessitating a boosting of the sewage by pumps to force it to the planned single outlet. Hence the lift stations, which will fulfill this function, are vitally necessary. And they, of course, will have to be operated and maintained in good order, the cost of which is a burden forced on the Town solely by the taking.

It is a well established proposition in an eminent domain taking that "the owner is to be put in as good position as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 87 L.Ed. 336. See also United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; Seaboard Air Line Ry. Co. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 67 L.Ed. 664; Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786, 790–791. We do not think that requiring a municipality to bear such an added operation and maintenance expense is a compliance with the equivalent position that the law demands.

The Government contends that such a cost is a business or speculative one, wholly apart from the value of the facility taken, and hence not included within the compensatory scope. This argument was adopted by the District Court, 104 F.Supp. at pages 372–373, in the following language:

> "Future use of the alternative system is neither within, nor impaired by, the seizure of the original. Again, if greater expenditure for operation and maintenance is required than before, that is a damage too consequential to ascribe to the take. Too, it is conjectural, speculative, and prophetic. The justice of the denial of this claim is sharply demonstrated by the converse of the proposition—the town should receive no less for its system if the substitute could be operated less expensively than the first."

Such reasoning was incorrectly applied to the instant claim. We do not deny that a comparison of general operation costs between the old system and the new is generally not a basis for a compensation

award. See United States v. City of New York, 2 Cir., 168 F.2d 387. Nor may an award be made for possible losses which may or may not occur at some future time. See Mayor and City Council of Baltimore v. United States, 4 Cir., 147 F.2d 786. But here we are dealing with a specific and known loss, which will commence as soon as the substitute system is put into effect. It is not a mere increase in operation expense, but a cost item that is keyed to the very existence of the new system. Without the lift stations the relocated sewer lines could not function at all. We do not have here a substitute road which must be cared for more efficiently, or property for which a higher rent must be paid. The lift stations are a new element which the Government by its own action has forced upon the Town, and it must bear all the added burdens which are thereby created.

Nor is the loss here involved to be denied for any speculative taint. No one can reasonably argue that the operation and maintenance of the lift stations will cost the Town nothing. It is not the existence of the loss which is conjectural but merely its amount, and we do not feel that this is a sufficient basis for denial of the claim.

■ However, the Town's demand for an approximate lump sum payment of $168,-370, based on the present value of the annual maintenance and operational expense of the five lift stations for their estimated life of ninety-nine years, is manifestly in excess of the requirements of just compensation. The capitalized period should certainly be much shorter, within practical bounds. Appellant is entitled only to the reasonable cost of operating the five lift stations for a reasonable period of time. The question of the method and procedure of calculation will be left for the District Court's determination.

The order of the District Court will, therefore, be reversed and the cause remanded for a determination, in accordance with the views expressed herein, of the amounts to be awarded on the two claims of the Town of Clarksville for additional compensation.

Reversed and remanded.