IN RE APPROPRIATION OF EASEMENT FOR HIGHWAY PURPOSES: MASHETER, DIR. OF HIGHWAYS, APPELLANT, *v.* CLEVELAND BOARD OF EDUCATION, APPELLEE.

[Cite as Masheter v. Bd. of Edn., 17 Ohio St. 2d 27.]

(No. 68-13—Decided February 19, 1969.)

*Mr. William B. Saxbe,* attorney general, and *Mr. I. Charles Rhoads,* for appellant.

*Mr. Clarence L. James, Jr.,* director of law, and *Mr. Donald J. Guittar,* for appellee.

DOYLE, J. The errors assigned by the Director of Highways relate to:

1. The standard of substitution or replacement value as the measure of compensation;

2. Extension of privilege to appraiser employed by adverse party;

3. The exclusion of conflicting prior statements of a witness on the ground that they occurred during a period of negotiation;

4. The admission of opinion evidence of replacement costs by the board of education expert in the absence of any specific plans for a replacement school;

5. The use of a single damage item verdict form, whereas Section 5519.03, Revised Code, requires separate findings of value for land and for buildings.

The charge of the court, directly attacked by the appellant as being an illegal method of computing damages in cases of this character, is in essential part as follows:

"Ordinarily, in this state of Ohio, the standard of measurement for valuation of private properties taken for a public purpose would be the fair market value of that property taken. Fair market value has been defined as the price a willing buyer would pay a willing seller, neither being under any compulsion or duress to sell or to buy. However, such a standard of measurement of compensation is not applicable in this case.

"Here, where there is a taking of a public facility, a school, by another public body, the state, the measure of compensation may be made by the payment of the cost of a substitute, so long as a full equivalent is afforded for the property taken. This award however must not be in excess of strict equivalence.

"The equivalence requirement which must be met with respect to the substitute facility for school facilities taken by eminent domain is more than that of mere monetary value, and the substitute facility must be such that the school board is legally required to construct and maintain, even if this type is more expensive and more efficient than the facility which was condemned.

"In other words, where no market value exists for a school, as is the case here, and the highest and best use of the property is for school purposes, the replacement value of the property taken is a proper element for your consideration.

"The reasoning for measuring the amount of compensation to be paid for a school facility in a different manner than the compensation to be paid for the taking of a private property is twofold:

"First, the fair market value of the school property, that is its replacement cost less depreciation, is not a true measure of its value to the school board or to the community;

"Second, where two public bodies are properly and satisfactorily carrying out their responsibilities, and one of these bodies is rendered unable to continue to carry out its responsibility by the acts of another, it is the duty of the public body incapacitating the other to restore the injured public body to the same station and status it enjoyed prior to the intrusion of its function.

"That is why the measure of compensation to be paid the Cleveland City School District for the taking of the Buhrer School property is the replacement cost or the cost of an equivalent substitute, and it is your duty to determine that compensation from the evidence that has been presented herein.

"In determining this compensation to be paid, you may consider the location of the school, the number of classrooms, the pupils served by the school, the highest and best use of the property, [and] the need for a school in this area.

"All of this must be considered in the light of the evidence which you have received. The court charges you to consider all of the facts and circumstances which you find have been shown by the evidence to bear upon the replacement cost or the cost of a substitute facility.''

In addition to this general charge, the jury, upon the request of the Board of Education, was given the following special instructions:

1. "The eminent domain taking of school facilities may be justly compensated by payment of cost of a substitute so long as a full equivalent is afforded for the property taken, but the award must not be in excess of strict equivalence.''

2. "The equivalence requirement which must be met with respect to substitute facility for school facilities taken by eminent domain is more that of utility than of mere monetary value, and the substitute facility must be that which the school board is legally required to construct and maintain, whether this type be more expensive or efficient than the facility which was condemned."

No problem is presented as to the authority of the Director of Highways to appropriate for highway purposes the school property involved. That authority is contained in Section 5519.01, Revised Code.

The first question for decision is, what is the measure of compensation to be awarded the owner? Did the court err in its directions to the jury in respect to determination of the true value in money for the property taken? The owner, although a public body, stands in law in the same position as a private person.

It is the claim of the board of education that "the law of just compensation requires the cost of a substitute as the basis for making a board of education whole," and that the necessary elements under which the doctrine may be invoked (all of which, it is asserted, have been established in the trial) are:

1. The board of education must be under legal obligation to educate children with educational facilities.

2. The substitute or replacement facility must factually be necessary.

3. There is no "fair market value," that is there are no comparable sales, nor is the property involved income producing, so that in law and fact, there is no market value for the facility or school.

4. The substitute facility must not be in excess of strict equivalence of the facility taken but must be the full equivalence of its replacement, that is the equivalence is more that of utility than dollars and cents value.

The Department of Highways objects to using the cost-of-substitution measure of damages, mostly for the reason that the depreciation of the condemned facilities is not made an important factor and that just compensation

does not contemplate exchanging new public school facilities for old ones.

When the many reported cases throughout the nation are reviewed, the conclusion must be drawn that just compensation for a taking of property already devoted to public use does not mean the same in all jurisdictions. There are authorities which hold for substitution value rather than market value. See *United States* v. *Certain Land in Brooklyn*, 346 F. 2d 690; *Clarksville* v. *United States*, 198 F. 2d 238; *United States* v. *Certain Land in Red Bluff*, 192 F. Supp. 725; *Wichita* v. *Unified School District*, 201 Kan. 110, 439 P. 2d 162; *County of Cook* v. *Chicago*, 84 Ill. App. 301, 228 N. E. 2d 183; *State* v. *Waco Independent School District* (Tex Civ. App.), 364 S. W. 2d 263. These cases, apply the substitution-value standard on the theory that there is a distinction between a public facility and private property; that a public facility produces no income; that it is not the kind of property sold generally; and that, as a consequence, income and comparable sales approaches, used in determining market value, are useless. The theory is that there is no market value for such facilities and no market value can be determined.

Other cases adopt the theory of a market value for such properties. While the absence of a market for a public facility may render appraisal more difficult, nevertheless it may be reasonably valued on a cost-approach basis, a recognized appraisal technique. Such cost approach would be the replacement cost of the old buildings taken, less observed physical depreciation. Obsolescence is also a recognized component of depreciation in the real estate appraisers' lexicon.

There is no precedent directly in point in this state controlling the method of determining just compensation for the appropriation of public school buildings. The latest Ohio case involving the appropriation of a special-purpose property (a children's home) is *Board of County Commrs.* v. *Thormyer*, 169 Ohio St. 291. It appears from that case that the market-value theory was recognized. In the case before us, we find no justification for departing

from the market-value measure and from assuming a willing purchaser, which purchaser would bid as though, in fact, there were an active market. This market value could be determined by the application of old principles to new conditions.

The method of computing compensation for the land and buildings taken may be measured in money upon the basis of its maximum value for any purpose for which its use is suitable, including the use which is presently made of it. The land value in the instant case should not present a serious problem, for the reason that sale prices of similar parcels can be compared. The buildings, however, present a more difficult problem. Two of the buildings are 71 and 85 years old respectively. The gymnasium is 29 years old. In the evidence are various representations of the future life of the buildings. If it is assumed that the usual expected economic life of such structures is 100 years, it is obvious that the present structures have considerably less than that expected life. It is not proper to compute the true value in money on the basis of present costs of new structures with long economic lives, when each of the structures under consideration has a much shorter economic life. True value in money may be computed by taking a depreciation factor from a replacement cost estimate.

The replacement cost of the present facility, together with an analysis of its depreciation, is a more reliable method of arriving at true value, and, to the extent that the charge of the court discarded this approach to true value, it was prejudicial to appellant, the Director of Highways.

There are specific statutes in this state requiring relocation or duplication of property or facilities taken through the procedure of eminent domain. See Sections 5537.06 and 4931.08, Revised Code. These statutes, however, do not relate to the acquiring of public school property by the Department of Highways, and may not be applied to such an appropriation.

Directing attention now to the remaining assignments of error, we find error in the court's exclusion of the testimony of an expert witness who had been employed by the property owner, and error in the exclusion of conflicting prior statements of a witness on the ground that they occurred during a period of negotiation. The fourth assignment of error relates to the cost of a replacement school. In view of the position taken as to the first assignment of error, this question need not be ruled upon. The fifth assignment of error relates to "a single damage item verdict." Section 5519.03, Revised Code, requires the jury in a case of this kind to make a separate finding of value for the land and for the structure. The single finding verdict form used in this case was probably used because of the single-value theory of damages employed by the court. This problem will not occur upon a retrial of the cause on the market-value theory of damages. The statutory requirement is persuasive, however, of a legislative intent that property value, rather than facility replacement, is the proper standard of measurement of compensation for cases of this kind.

The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed.*

Taft, C. J., Zimmerman, Matthias, O'Neill and Schneider, JJ., concur.

Herbert and Duncan, JJ., not participating.

Doyle, J., of the Ninth Appellate District, sitting by appointment.