[Cite as *Hyden v. Anderson*, 2024-Ohio-1578.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

JOHN HYDEN,

Plaintiff-Appellant,

v.

MYRON ANDERSON,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0087**

---

Civil Appeal from the
Youngstown Municipal Court of Mahoning County, Ohio
Case No. 2021 CVF 00048

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gregg A. Rossi*, Rossi & Rossi Co., for Plaintiff-Appellant and

*Atty. Robert J. Kidd*, Gallagher, Gams, Tallan, Barnes & Littrell, LLP, for Defendant-Appellee.

Dated:  April 22, 2024

**Robb, P.J.**

{¶1} Plaintiff-Appellant John Hyden appeals the decision of the Youngstown Municipal Court granting summary judgment for Defendant-Appellee Myron Anderson. Appellant sought recovery for the alleged "residual diminution in the value" of his vehicle after collision repairs were paid by Appellee. Through a summary judgment motion, Appellee successfully argued that any recovery would be capped at the primary measure of damages known as the "gross diminution in value," which is the fair market value immediately before the injury (pre-collision value) minus the fair market value immediately after the injury (pre-repair value). Appellant points to his expert's testimony on the vehicle's value both pre-collision and *post*-repair and argues he need not provide evidence of the vehicle's value in its damaged, pre-repair state, suggesting the primary measure of damages is not a cap on recovery. For the following reasons, the trial court's judgment is affirmed.

### STATEMENT OF THE CASE

{¶2} On August 29, 2019, Appellant's 2018 Ford Expedition was involved in a collision with Appellee's vehicle in Youngstown. Appellant's vehicle was repaired at an auto body shop for $12,742.07. The repair bill was paid by Appellee (through his insurer).

{¶3} On January 11, 2021, Appellant filed a complaint against Appellee in the Youngstown Municipal Court seeking to recover additional property damages from the collision. Appellant claimed his vehicle, although repaired, suffered a diminished *residual* value due to the collision.

{¶4} Appellee's answer alleged a failure to state a claim and asserted the diminution in value subsumed the cost of repairs. (The answer also denied various allegations and set forth additional defenses, such as accord and satisfaction and failure to mitigate.) Appellee originally filed a jury demand but thereafter withdrew the request.

{¶5} During discovery, Appellant provided the defense with a November 11, 2019 expert report written on the letterhead of a local car dealership. (Depo. Ex. A). In the letter, the expert said CarFax reports are an important factor in car valuations, opining even a minor reported incident can substantially impact a vehicle's value despite successful professional repairs. He said this was especially true for "low mileage

specialty vehicles like the one" in the case at bar, noting it had 10,000 miles on it. The letter then said the dealership would have appraised the vehicle at $45,000 "retail" (and $39,000 "wholesale/trade-in") if it had a "clean Car Fax with no incidents." He said, in the dealership's professional opinion, a $15,000 collision repair would impact the car's value by at least 20%, and the dealership would thus appraise the post-repair value of the vehicle as $36,000 retail (and $31,200 wholesale/trade-in).

{¶6} At deposition, this expert testified he was a salesperson and specialty car manager for a local Chrysler Jeep Dodge dealership. He sold Appellant the 2018 Ford Expedition at issue when it was "[v]ery close to brand new" with approximately 600 miles on it. (Depo. 15). When asked about the figures in his letter, the expert said he looked at Manheim Market Report (agreeing it was similar to "Kelley Blue Book publication or NADA"). (Depo. 17). When he learned the cost of repair was less than $15,000, it did not affect his opinion that the collision damage caused the value to drop by 20%, reiterating his $45,000 clean retail value dropped to a post-repair retail value of $36,000. (Depo. 21-22, 24).

{¶7} The expert clarified that he used the term "retail value" as the price someone would expect to pay upon walking into the dealership and finding the exact car for sale. He acknowledged a dealership has overhead and profit concerns.

{¶8} The expert said he used the term "wholesale/trade-in value" as the price a person would expect to receive from a dealership or wholesale distributor if they traded in their vehicle. He acknowledged this value was typically less than if the person were to sell his vehicle "to someone off the street" (in a private sale). (Depo. 19).

{¶9} Defense counsel defined "fair market value" as "an arm's length transaction where someone has no obligation to buy, and you have no obligation to sell, so it would be a true - - basically an off-the street transaction." When counsel then pointed out the letter report did not indicate an opinion on such fair market value, the expert answered, "I'm not in the business of doing that." (Depo. 20).

{¶10} When counsel asked if he nevertheless determined the vehicle's fair market value, the expert stated, "What I put there was the fair market value, meaning the retail, at the 45,000; the fair market value, as we look at it as wholesale or trade-in, would be 39,000" (if CarFax contained no report of the wreck). (Depo. 20). Counsel later re-

inquired, "So you never - - you're not going to be offering an opinion as to what the fair market value in an arm's length transaction would have been at that time before and then after the repairs are done for that vehicle, right?" The expert said, "No." (Depo. 24).

**{¶11}** As to the vehicle in its damaged condition, the expert said he never saw the vehicle or photographs after the collision. (Depo. 24). He did not know what repairs were conducted on the vehicle and had no knowledge of any issue with the repairs. (Depo. 25). He explained he was not asked to determine and did not determine the value of the vehicle "in its post accident, pre repair condition, so in its damaged condition." When asked if he would be offering an opinion on the vehicle's value in its damaged condition if the case were to proceed to trial, he answered, "Not in its damaged condition, no. I'd be offering my opinion, which is what I wrote in the letter." (Depo. 23). The transcript of this deposition testimony was filed with the court.

**{¶12}** Appellee moved for summary judgment, arguing Appellant's claim relied on methodology (for calculating residual diminished value due to an alleged stigma from a collision) that was inconsistent with Ohio law. The motion cited the Supreme Court's *Falter* decision, setting forth the following two measures of damages: (1) the difference in fair market value immediately before and immediately after the accident (figure 1); and (2) the cost of repairs (figure 2) *so long as it does not exceed figure 1*. *Falter v. City of Toledo*, 169 Ohio St. 238, 158 N.E.2d 893 (1959).

**{¶13}** Appellee's summary judgment motion then cited appellate case law recognizing the ability to recover for residual diminution in value in addition to the cost of repair "provided that the plaintiff may not recover damage in excess of the difference between the market value of the automobile immediately before and immediately after the injury" (the gross diminution in value cap). *Rakich v. Anthem Blue Cross & Blue Shield*, 172 Ohio App.3d 523, 2007-Ohio-3739, 875 N.E.2d 993 (10th Dist.), ¶ 13. The motion concluded a plaintiff is required to demonstrate the fair market value at the following points: (1) immediately pre-collision; (2) immediately post-collision (damaged); and (3) post-repair.

**{¶14}** Appellee emphasized Appellant's refusal to provide evidence of the vehicle's fair market value in its damaged state, pointing out Appellant's expert testified he was not asked to determine the vehicle's post-accident, pre-repair condition and he

would not be offering an opinion on that topic at trial.  Appellee concluded Appellant could not as a matter of law attempt to recover damages exceeding the cap by demanding more than the fully-paid repair cost without showing this cost was less than the gross diminution in value.

{¶15}  Alternatively, Appellee's summary judgment motion said the portion of the expert's opinion on "retail" value (before the collision and after the repairs) was not akin to the definition of fair market value set forth in the standard jury instruction.  The motion pointed to the testimony of Appellant's expert saying he was "not in the business of doing that" when asked if he would be offering an opinion on the fair market value as defined as an "arm's length" or "off-the street" transaction where there is no obligation to buy or sell.  (Depo. 20, 24).  Appellee also observed the expert's opinion on wholesale or trade-in value was even further from the definition of fair market value.

{¶16}  In response to the summary judgment motion, Appellant supplied an affidavit from his expert.  In the affidavit, the expert said he performs appraisals in his role at the dealership, noting his appraisal value is based primarily upon the vehicle's make, model, mileage, and condition order to assess its value to the dealership.  (Aff. ¶ 4, 6).  He added the fair market value of the vehicle "with a clean trade" would have been $38,375 according to the June 2019 NADA Official Used Car Guide (just under the pre-collision trade-in value of $39,000 assigned in his letter and deposition testimony).  (Aff. ¶ 7).

{¶17}  In the affidavit, the expert agreed the actual cost of repairs was $12,742.07 (noting his letter originally referred to $15,000).  He then confirmed his testimony that the fact of a past collision causing this amount in repairs would result in a 20% reduction in value, opining the diminution in value was directly and proximately caused by the collision at issue.  (Aff. ¶ 9-11,14).  He said he took all appraisal factors into account when he appraised the vehicle at $36,000 retail, which was a 20% reduction of the $45,000 retail value he would have assigned if the vehicle had not been in the collision (and when he appraised the vehicle at $31,200 wholesale/trade-in, which was a 20% reduction from the $39,000 wholesale/trade-in value he would have assigned if not for the collision).  (Aff. ¶ 12-13).

{¶18} Appellant's opposition to summary judgment argued the Supreme Court's *Falter* decision was inapplicable. First, he said the case merely presented a pleading question on cost of repairs. Then, construing Appellee's argument as a rejection of the theory of residual diminution in value, Appellant said he was not attempting to recover an additional award by seeking the difference between market value immediately before and after the accident but was seeking to recover distinct money as a residual diminution in value claim because the cost of repairs did not fully compensate him. He concluded his expert's testimony on the retail value without a collision and the 20% reduction in retail value after repairs was sufficient to allow recovery for residual diminution in value. As to the "fair market value" terminology, Appellant said the standard jury instruction was not mandatory law and cited a case equating fair market value with retail value.

{¶19} In reply, Appellee pointed out his summary judgment motion acknowledged a plaintiff may recover for a vehicle's diminution in value but not without proving fair market value in its damaged condition. According to Appellee, *Falter* necessarily required evidence on gross diminution in value by capping recovery at the lower of the cost of repairs or the difference between the fair market value immediately before and immediately after the accident. Appellee's reply also pointed out the retail value assigned by a dealership is inflated due to their need to account for overhead and make a profit, concluding the retail value figure is not consistent with Ohio law defining fair market value.

{¶20} A magistrate provided another opportunity for Appellant to provide "factual evidence that comports with the law surrounding fair market value and diminished value." (4/6/22 Mag. Order). However, Appellant asked the court to proceed to a decision on the summary judgment filings.

{¶21} The magistrate then granted summary judgment, which the trial court immediately adopted. (5/2/22 Mag. Dec.; 5/5/22 J.E.). Appellant filed an objection to the magistrate's decision, arguing the magistrate erred in construing the expert's testimony on the subject of fair market value and stating the definition in the cited jury instruction was not actual law. Upon reviewing the objection, the trial court issued a judgment, which

merely adopted the magistrate's decision without entering judgment for a party. (5/24/22 J.E.).[1]

**{¶22}** On June 27, 2023, the trial court issued a final appealable order. The court recited the two measures of damages set forth in *Falter* and concluded Appellant provided no evidence to comport with the legal requirements for recovering residual diminution in value. The court pointed to the expert's testimony on "fair market value" and the acknowledgement that he would not be offering any opinion at trial on the value of the vehicle in its damaged condition. The court adopted the magistrate's decision, granted summary judgment in favor of Appellee, and dismissed the lawsuit. The within appeal followed.

ASSIGNMENT OF ERROR

**{¶23}** Appellant's sole assignment of error contends:

"THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."

**{¶24}** "Under the general rule the owner of a damaged motor vehicle may recover the difference between its market value immediately before and immediately after the collision." *Falter v. City of Toledo*, 169 Ohio St. 238, 158 N.E.2d 893 (1959), paragraph one of the syllabus. The Supreme Court referred to this figure as "the diminution in market value due to the injury." *Id.* at 240. It has also been called the vehicle's "gross diminution in value." *Rakich v. Anthem Blue Cross & Blue Shield*, 172 Ohio App.3d 523, 2007-Ohio-3739, 875 N.E.2d 993, ¶ 14 (10th Dist.).

**{¶25}** After setting forth the general rule, the Supreme Court held the owner of a damaged vehicle may file a complaint seeking to recover the reasonable cost of repairs, which can be recovered as damages "provided that such recovery may not exceed the difference between the market value of the vehicle immediately before and immediately

---

[1] Prior to the within appeal, Appellant appealed from the May 24, 2022 judgment, but this court dismissed for lack of a final appealable order in 7th Dist. No. 22 MA 0059. When Appellant filed a motion to "reinstate" that appeal, we rejected the request as untimely while pointing out the notice of appeal and docketing statement made no reference to a subsequent June 2, 2022 judgment by a visiting judge and opining the June 2 judgment was not a sufficient final order in any event. Appellant thereafter asked the trial court for status conferences to discuss the procedure for obtaining a final order.

after the collision." *Falter*, 169 Ohio St. 238 at paragraph two of the syllabus (where the defendant argued cost of repairs was not an appropriate allegation in the complaint even though the complaint said the cost of repairs was the same as the gross diminution in value). The Supreme Court observed the figure 2 cost of repairs was capped at the figure 1 diminution in market value caused by the injury because the "plaintiff should not benefit by the loss." *Id.* at 240.[2]

**{¶26}** The Ohio Supreme Court indicated the circular nature of a plaintiff pleading both theories since the figure representing the difference in the market value before and after the collision was said to be the same as the cost of repair in that case. *Id.* It has been observed that "repair costs are merely good evidence of diminished value" and the "cases which hold that diminished value of the property is a ceiling on repair cost recovery are essentially following a diminished value rule." *American Serv. Ctr. Assoc. v. Helton*, 867 A.2d 235, 242 (D.C.App.2005), fn. 8 (speaking of gross diminution in value), citing 1 Dobbs, *Law of Remedies*, Section 5.13(1), 5.14(1), 836, 852 (2d Ed.1993). *See also* O.J.I. 315.19(2) ("You may consider the reasonable cost of necessary repairs as evidence of the reduction in fair market value. The measure of damage, however, is the difference in the fair market value of the vehicle immediately before and after the accident.").[3]

---

[2] Loss of use is also recoverable where repairs can be made in a reasonable time. *Hayes Freight Lines v. Tarver*, 148 Ohio St. 82, 73 N.E.2d 192 (1947). "Where a motor vehicle has been damaged through the negligent acts of another only to such extent that it is reasonably capable of being repaired within a reasonable period of time after its damage, the owner may recover not only the difference in value of the vehicle immediately before and immediately after the damage, but may also recover the loss of the use of the vehicle for such reasonable period of time as is necessary to make the repairs." *Id.* at paragraph two of the syllabus. No similar damage addition (cap exception) from the Ohio Supreme Court has been cited regarding the residual diminution in value theory of recovery proposed by Appellant, who relies on appellate cases, which recognize the theory but impose a cap.

[3] Typically, the gross diminution in value is the same as the cost of repairs. In a case cited by Appellant, the court observed the cost of repairs could be used as evidence of damages when there is no objection to a lack of evidence on the difference in the fair market value of the vehicle before and after the collision. *Welsh v. Yoshida*, 11th Dist. Lake No. 2002-Ohio-1954 (Apr. 19, 2002), citing *Allstate Ins. Co. v. Reep*, 7 Ohio App.3d 90, 91, 454 N.E.2d 580 (1982). Likewise, a defendant moving for summary judgment can rely on evidence as to the undisputed cost of repairs already paid as factual evidence of the gross diminution in value (aka the *Falter* figure 1 cap). While protesting the legal application of a cap to his residual diminution in value theory of recovery, Appellant did not object (in the summary judgment, objection, or appellate stages) to the use of undisputed cost of repairs for *factual* evidence of the cap. Although Appellee framed the argument as a plaintiff failing to prove the cap in *Falter's* figure 1, Appellee was the movant and this was more of an argument that Appellant's damages did not exceed the cap, which was presumed to be the already-paid cost of repairs where there was no objection to the use of this undisputed figure.

---

Case No. 23 MA 0087

**{¶27}** Appellant points to post-*Falter* appellate court decisions stating a claim for a vehicle's "post-repair diminution in value" or "residual diminution in value" may be brought by a plaintiff even after repairs are made and the cost of such repairs are paid by or on behalf of the defendant. For instance, the Tenth District reversed a summary judgment where the trial court ruled a claim for post-repair diminution in value did not exist (due to *Falter*'s two exclusive methods for showing damages). *Rakich*, 172 Ohio App.3d 523 at ¶ 1, 4-6, 23.

**{¶28}** Initially, the *Rakich* court referred to the rule in *Falter* stating, "a plaintiff may not recover both the cost of repairs to her vehicle and the difference in the market value of the vehicle immediately before and immediately after the accident" as this would represent overcompensation or double recovery due to overlapping damage measures, emphasizing: "Diminution in market value subsumes the cost of repair." *Id.* at ¶ 13. "The Ohio Supreme Court was careful to preclude that result in *Falter* by limiting the recoverable cost of repairs to the difference in the market value of the vehicle immediately before and immediately after the accident." *Id.*

**{¶29}** The Tenth District then explained this does not answer the legal question of whether a vehicle owner may recover for suffering a post-repair market value that is less than the pre-accident market value when the cost of repairs did not fully compensate the owner because the car was not restored to pre-collision value. *Id.* at ¶ 14. This "residual diminution in value" theory views the difference between the value before the injury and the value after the repairs. *Id.* (finding the plaintiff's request was not an attempt to recover an amount exceeding gross diminution in value {the difference between the market value immediately before and immediately after the accident}).

**{¶30}** The Tenth District adopted the ruling by the District of Columbia Court of Appeals in *Helton*. *Id.* at ¶ 16-17, 19. The defendant in *Helton* argued the two alternative damage theories (in case law akin to *Falter*) precluded a residual diminution in value theory of recovery; however, the D.C. appellate court held pre-litigation recovery of repair costs did not *necessarily* preclude a claim for residual diminution in value. *Helton*, 867 A.2d at 242-243 (explaining a plaintiff would receive market value for a completely destroyed vehicle and a plaintiff whose vehicle is repaired should not be treated differently by suffering a lower market value post-repair). The Tenth District similarly concluded:

"for some property, the additional recovery for residual diminution in worth is necessary to make the injured party whole." *Rakich*, 172 Ohio App.3d 523 at ¶ 17, quoting *Helton*, 867 A.2d at 242-243.

**{¶31}** Notably, Appellee does not contest the application of this law but points to the concluding portion of the holding, which Appellant's argument seems to ignore. That is, *Rakich* set forth the *Helton* holding as follows: "[W]hen a plaintiff can prove that the value of an injured chattel after repair is less than the chattel's worth before the injury, recovery may be had for both the reasonable cost of repair and the residual diminution in value after repair, *provided that the award does not exceed the gross diminution in value.*" (Emphasis added.) *Id.* at ¶ 17, quoting *Helton*, 867 A.2d at 243.[4] The *Rakich* court then likewise concluded:

> we find that when a plaintiff proves that the value of his automobile after repair is less than the preinjury value of the automobile, the plaintiff may recover the residual diminution in value in addition to the cost of repair, *provided that the plaintiff may not recover damages in excess of the difference between the market value of the automobile immediately before and immediately after the injury.*

(Emphasis added.) *Id.* at ¶ 19.

**{¶32}** In addressing another argument on the need to prevent windfalls, the Tenth District reiterated: "just as a plaintiff recovering solely the cost of repairs may not recover damages in excess of the difference between the market value of the vehicle immediately before and after the accident, neither may a plaintiff recovering both the cost of repairs and the residual diminution in value be entitled to recover damages in excess of that difference." *Id.* at ¶ 21.

**{¶33}** Thereafter, the Second District found *Rakich* and *Helton* were well-reasoned decisions and adopted them. *Braum v. Kinderdine*, 2015-Ohio-696, 27 N.E.3d

---

[4] The D.C. Court of Appeals gave the example: "if a car worth $40,000 is worth only $25,000 after being damaged, it has suffered a $15,000 gross diminution in value. If after repairs of $10,000, the car is worth $30,000, the residual diminution in value is $10,000. Although the cost of repairs and residual diminution in value total $20,000, the award is capped at $15,000, the gross diminution in value." *Helton*, 867 A.2d 235 at fn. 10. Although the cost of repair measure of damages is modified by the phrase "with due allowance for any difference between the original value and the value after repairs," this residual diminution in value would still be part of *Falter's* figure 2 and thus subject to the cap of *Falter's* figure 1. *See, e.g., id.* at fn. 12, citing Restatement of the Law 2d, Torts, Section 928 (1979).

602, ¶ 25 (2d Dist.).  In *Braum*, the trial court granted summary judgment on the claim for residual diminution in value, declaring evidence on the claim would be precluded at trial and limiting the trial evidence on damages to that specifically discussed in *Falter*.  *Id.* at ¶ 7.  Although a different judge decided to allow evidence on the theory at trial, the earlier ruling would have limited what evidence the plaintiff would have decided to collect during trial preparation.  *See id.* at ¶ 8.  In any event, the trial judge later maintained the ruling that one can never recover residual damages after repair costs are paid.  *Id.*  The appellate court in *Braum* reversed, ruling:

> the trial court erred in refusing to consider evidence about the residual diminution in value of [the plaintiff's] automobile, which was repaired after a collision. Where a plaintiff can prove that the value of a damaged vehicle after repair is less than the vehicle's worth before the injury, the plaintiff may recover both the reasonable cost of repair and the residual diminution in value after repair, *provided that the award does not exceed the gross diminution in value*.

(Emphasis added.)  *Id.* at ¶ 2.

**{¶34}** As Appellee points out, *Braum* imposed the cap of *Falter's* figure 1.  "The amount of the recovery, including the cost of repair and residual diminution in value cannot exceed the gross diminution in value."  *Id.* at ¶ 28.

**{¶35}** Nevertheless, Appellant focuses on the *Braum* court's recitation of some of the plaintiff's trial evidence as including the fair market value before the collision, the cost of repairs paid by the defendant's insurer, and the value after repairs.  *See id.* at ¶ 29 (but those repairs did not succeed in correcting the damaged electrical or computer systems).  The court did not make note of the presence or absence of evidence on the pre-repair value of the vehicle immediately after the accident.

**{¶36}** However, the issue presented by the plaintiff on appeal in *Braum* involved the legal question of whether residual diminution in value after repairs was a valid theory of damages in Ohio after the repair cost was already paid by the defendant.  The Second District emphasized the trial court based its holding solely on the belief that residual diminution in value was a non-existent legal theory and remanded for further hearing while noting.  *Id.* at ¶ 6-7, 29, 38-39 (and "we express no opinion on what the ultimate result of

a fact-finder should be"). As mentioned above, the *Braum* plaintiff's evidence was limited prior to trial. And, there was no indication the defense alternatively argued on appeal that there was insufficient evidence presented to show damages beyond the cap in figure 1. *See id.* at ¶ 25, 30. Moreover, the *Braum* court repeatedly cited the *Falter* figure 1 damage cap (being gross diminution in value represented by the difference between fair market value immediately before and immediately after the accident) as applicable to the case and to the residual diminution in value recovery. *Id.* at ¶ 2, 13, 19, 22, 28.

{¶37} As the *Braum* court concluded, the reasoning in *Rakich* and *Helton* about the cap is persuasive. The cap in the Ohio Supreme Court's *Falter* decision should not be ignored. To recover more than the cost of reasonable repairs, a plaintiff must present evidence of the fair market value of the vehicle immediately after the crash (along with his evidence of fair market value immediately before the crash) to show the cap would not be exceeded.

{¶38} Accordingly, Appellant erroneously argues he is entitled to the full cost of repairs ($12,742.07) plus all residual diminution in value (allegedly $9,000) despite successful repairs and without regard to whether this would exceed the gross diminution in value. Rather, the figure representing the cost of repairs plus residual diminution in value would be capped at gross diminution in value, which is the difference between the fair market value immediately before and immediately after the injury. If the gross diminution in value is not higher than the cost paid to repair the vehicle, then a plaintiff cannot file a claim for residual diminution in value. In other words, the figure used to allege residual diminution in value ($9,000) was irrelevant where the gross diminution in value did not exceed the amount of paid repairs; in such event, the law considers the diminution in value to subsume the cost of repairs. Accordingly, the trial court's decision is affirmed.

{¶39} Appellant sets forth an additional argument that his evidence sufficiently addressed the fair market value of the vehicle before the accident and again after the repairs were made. As noted above, Appellee's summary judgment motion (after arguing about the damage cap) alternatively argued the expert's appraisals did not qualify as proper evidence on the other required figures because he acknowledged his appraisal figures on retail value (or on wholesale/trade-in value) were not akin to the legal definition

of fair market value. Before agreeing with Appellee's argument that *Falter* imposed a cap on residual diminution in value recovery, the trial court cited the expert's deposition and emphasized the testimony that he would not be offering an opinion of "fair market value" as he was "not in the business of doing that."

**{¶40}** As recited in our Statement of the Case above, defense counsel provided the following definition of fair market value to Appellant's expert: "an arm's length transaction where someone has no obligation to buy, and you have no obligation to sell, so it would be a true - - basically an off-the street transaction." When counsel observed the expert's report did not indicate an opinion on such fair market value, the expert answered, "I'm not in the business of doing that." (Depo. 20). He testified his appraisal was based on his assignment of retail and wholesale/trade-in values to the vehicle (before the accident and after repairs). He said he used the term "retail value" to mean the price someone would expect to pay if they walked into the dealership and found the exact car for sale and the term "wholesale/trade-in value" to mean the price a person would expect to receive from a dealership or wholesale distributor if they traded in their vehicle.

**{¶41}** In general, fair market value is "the price which would be agreed upon at a voluntary sale between an owner willing but not required to sell and a purchaser willing but not required to buy, when both are fully aware and informed of all circumstances involving the value and use of the particular property." *Masheter v. Kebe*, 49 Ohio St.2d 148, 151, 359 N.E.2d 74 (1976). *See also Masheter v. Cleveland Bd. of Ed.*, 17 Ohio St.2d 27, 29, 244 N.E.2d 745 (1969) ("Fair market value has been defined as the price a willing buyer would pay a willing seller, neither being under any compulsion or duress to sell or to buy."); *Stringfield v. Stringfield*, 7th Dist. Monroe No. 05 MO 16, 2007-Ohio-1116, ¶ 18. This is consistent with the standard Ohio Jury Instruction, which provides the following definition of fair market value: "The fair market value is the price the vehicle would bring if offered for sale in the open market by an owner who desired to sell it, but was under no necessity or compulsion to do so, and when purchased by a buyer who desired to buy it, but was under no necessity or compulsion to do so—each having knowledge of the pertinent facts concerning such vehicle." O.J.I. 315.19(3).

**{¶42}** Appellant cites case law equating "retail value" with fair market value. For instance, the Eleventh District set forth the standard definition of fair market value and

then said it was "otherwise known as 'retail value' [and was] that price which would be agreed upon between a willing seller and a willing buyer in a voluntary sale on the open market." *Welsh*, 11th Dist. No. 2002-Ohio-1954. *See also Gough-Northrup v. Hammonds*, 5th Dist. Licking No. 2022 CA 00023, 2022-Ohio-4342, ¶ 41. In making the "otherwise known as" comment, the *Welsh* court was distinguishing fair market value from wholesale value. The court pointed out wholesale value involved a different market, one where the willing wholesale buyer is usually a retailer with plans to resell for retail value. *Id.* (and stating an item's trade-in value involves "a similar market to wholesale value in that it represents the amount a seller may receive from a retailer who is attempting to make a sale to the seller"). As Appellant's expert testified, the "wholesale/trade-in" value would typically be less than if the owner were to sell his vehicle "to someone off the street" (in a private sale). (Depo. 19).

**{¶43}** Regarding his retail value explanation, we note retail replacement value can be different from fair market value. *See, e.g.*, *In re Appropriation of Easements for Hwy. Purposes*, 174 Ohio St. 441, 450, 190 N.E.2d 446 (1963) (evidence of replacement cost less depreciation does not meet the fair market value standard); 11 U.S.C. 506 (a)(2) (defining replacement value as the price a retail merchant would charge considering the property's age and condition). As pointed out by Appellee, the dealership sells a vehicle in order to make a profit and cover its overhead expenses in order to achieve sales. Nevertheless, Appellant urges credibility or consistency is a matter for trial and his valuations provided some evidence tending to show fair market value, pointing out he opined a 20% reduction in value occurred due to the wreck and alternatively suggesting a fact-finder can adopt a figure between the retail and wholesale testimony even if the expert's value varied from the legal definition.

**{¶44}** In *Welsh*, the Eleventh District concluded the presentation of evidence at trial on the wholesale value after the accident was not evidence of the fair market value after the accident. *Welsh*, 11th Dist. No. 2002-Ohio-1954. Yet, here, Appellant presented evidence of retail value in addition to wholesale/trade-in values (pre-injury and post-repair). Regardless, as set forth in the prior section above, there was no valuation after the accident (before repairs) to show recovery was not barred by the cap where repairs were already paid.

Case No. 23 MA 0087

{¶45} That is, contrary to Appellant's threshold argument, a residual diminution in value claim is capped at the gross diminution in value. Where the fair market value before the accident minus the fair market value immediately after the accident (while damaged) is not greater than the already-paid cost of repair, a plaintiff cannot receive the figure representing the fair market value prior to injury minus fair market value post-repair in addition to the cost of repairs. Accordingly, the issue of whether an expert's valuation opinions must specifically follow the legal definition of fair market value to avoid summary judgment need not be addressed due to our conclusion that a genuine issue of material fact did not exist on whether the damage cap exceeded the repair costs.

{¶46} For the foregoing reasons, Appellant's sole assignment of error is overruled, and the trial court's judgment is affirmed.

Waite, J., concurs.

Hanni, J., dissents with dissenting opinion.

Case No. 23 MA 0087

Hanni, J., Dissents with Dissenting Opinion.

**{¶47}** With regard and respect to my colleagues, I must dissent from the majority opinion. I would find that Appellant presented enough evidence, by way of his expert's affidavit, to allow the matter to proceed to trial.

**{¶48}** In general, the appropriate measure of damages for a plaintiff to recover in a tort action is the amount that will compensate and make that plaintiff whole. *Ohio Edison Co. v. Royer*, 2018-Ohio-75, 92 N.E.3d 912, ¶ 11 (9th Dist.), citing *Pryor v. Webber*, 23 Ohio St.2d 104, 107, 263 N.E.2d 235 (1970). "An injured party 'should be neither undercompensated nor overcompensated,' and bears the burden of proving the pecuniary value of the injury." *Id.*, quoting *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (1975).

**{¶49}** In this case, Appellant presented an expert opinion that after his vehicle was repaired the vehicle's value was still less than it had been pre-accident. The expert gave opinions that both the retail value and the wholesale value of the vehicle were now less than they would have been had the vehicle never been in an accident. In other words, the expert opined that Appellant was not fully compensated and made whole by the repairs to his vehicle.

**{¶50}** "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993). I would find that based on the evidence Appellant presented, he met his burden on summary judgment. For these reasons, I would reverse the trial court's judgment and remand the matter.

––––––––––––––––––––––––

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**